**GOODWIN PROCTER LLP**
MARK DAVID MCPHERSON (SBN 307951)
*mmcpherson@goodwinlaw.com*
620 Eighth Avenue
New York, NY 10018
Tel.: 212.813.8869
Fax.: 212.202.4582

W. KYLE TAYMAN (pro hac vice application pending)
*ktayman@goodwinlaw.com*
901 New York Avenue NW
Washington, DC 20001
Tel.: 202.346.4000
Fax.: 202.346.4444

LAURA BRYS (SBN 242100)
*lbrys@goodwinlaw.com*
601 S. Figueroa Street, 41st Floor
Los Angeles, CA
Tel.: 213.426.2500
Fax.: 213.623.1673

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| STEPHEN PLOTSKER and MICHAEL KLEEMANN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ENVATO PTY LTD and ENVATO ELEMENTS PTY LTD,<br><br>Defendants. | Case No. 2:24-cv-4412-MEMF-RAO<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6) AND DOCTRINE OF FORUM NON CONVENIENS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: December 5, 2024<br>Time: 10:00 a.m.<br>Courtroom: 8B<br>Judge: Hon. Maame Ewusi- Mensah Frimpong<br><br>Filed/Lodged Concurrently with:<br>1. Declaration of Mark David McPherson<br>2. Request for Judicial Notice<br>3. [Proposed] Order<br><br>Am. Complaint filed: June 17, 2024 |

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on December 5, 2024 at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 8B, of the United States District Court for the Central District of California, located at First Street Courthouse, 350 W. 1st Street, Los Angeles, California, before the Honorable Maame Ewusi-Mensah Frimpong, Defendants Envato Pty Ltd and Envato Elements Pty Ltd ("Defendants") will, and hereby do, move to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) and the doctrine of forum non conveniens.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, the Declaration of Mark David McPherson, the Request for Judicial Notice, all papers from this case on file with the Court, all other matters of which the Court may take judicial notice, any further evidence or argument offered to the Court at the hearing on this Motion, and any other evidence and argument the Court may consider.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on August 1, 2024.

Dated: August 9, 2024

Respectfully submitted,

**GOODWIN PROCTER LLP**

By: */s/ Mark David McPherson*

MARK DAVID MCPHERSON
*mmcpherson@goodwinlaw.com*
KYLE TAYMAN
*ktayman@goodwinlaw.com*
LAURA BRYS (SBN 242100)
*lbrys@goodwinlaw.com*

Attorneys for Defendants

## TABLE OF CONTENTS


Page

INTRODUCTION ..... 1

I. BACKGROUND ..... 2

A. Envato Licenses Creative Assets To Professionals ..... 2

B. Plaintiffs Agreed To Envato's Terms Of Service ..... 5

II. ARGUMENT ..... 7

A. The Amended Complaint Should Be Dismissed Under Fed. R. Civ. P. 12(b)(1) For Lack Of Standing. ..... 7

B. The Amended Complaint Should Be Dismissed Under Fed. R. Civ. P. 12(b)(6) For Failure To State A Claim. ..... 9

1. Envato Is Not A Video Tape Service Provider Under The VPPA ..... 10

2. Plaintiffs Do Not Allege Disclosure Of Personally Identifiable Information. ..... 12

3. Plaintiffs Consented To Envato's Recording And Use Of Information. ..... 14

C. The Amended Complaint Should Be Dismissed Because Australia Is A More Convenient Forum. ..... 17

1. Australia Provides An Adequate Forum For This Dispute. ..... 17

2. The Balance Of Private And Public Interest Factors Also Favors Dismissal. ..... 18

D. Leave To Amend Would Be Futile. ..... 20

CONCLUSION ..... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 9, 10

*Barclift v. Keystone Credit Servs., LLC*,
585 F. Supp. 3d 748 (E.D. Pa., 2022) ........ 8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 9

*Cantu v. Tapestry, Inc.*,
697 F. Supp. 3d 989 (S.D. Cal. 2023) ........ 10

*Cantu v. Tapestry, Inc.*,
No. 22-cv-1974-BAS-DDL, 2023 WL 4440662 (S.D. Cal. July 10, 2023) ........ 11

*Cantu v. Tractor Supply Co.*,
No. 2:23-cv-3027-HDV-JC, 2024 WL 1601257 (C.D. Cal. Mar. 21, 2024) ........ 10

*Cappello v. Walmart Inc.*,
No. 18-cv-06678-RS, 2019 WL 11687705 (N.D. Cal. Apr. 5, 2019) ........ 14

*Carijano v. Occidental Petroleum Corp.*,
643 F.3d 1216 (9th Cir. 2011) ........ 17

*Carroll v. Gen. Mills, Inc.*,
No. 23-cv-1746-DSF-MRWx, 2023 WL 4361093 (C.D. Cal. June 26, 2023) ........ 11

*Carter v. Scripps Networks, LLC*,
670 F. Supp. 3d 90 (S.D.N.Y. 2023) ........ 7

*Cervantes v. Countrywide Home Loans, Inc.*,
656 F.3d 1034 (9th Cir. 2011) ........ 20

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) ........ 7

*D.L. Markham, DDS, MSD, Inc. v. Variable Annuity Life Ins. Co.*,
No. 2:21-cv-00007-TLN-KJN, 2022 WL 891290 (E.D. Cal. Mar. 25, 2022) ........ 19

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ........ 8, 9, 13

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 12

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012) ........ 15

*Gambra v. Int'l Lease Fin. Corp.*,
377 F. Supp. 2d 810 (C.D. Cal. 2005) ... 19

*Ghanaat v. Numerade Labs, Inc.*,
689 F. Supp. 3d 714 (N.D. Cal. 2023) ... 14

*Glob. Med. Sols., Ltd v. Simon*,
No. 12-cv-04686-MMM, 2013 WL 12371339 (C.D. Cal. Jan. 10, 2013) ... 18

*Globatrac LLC v. JB Squared Ltd.*,
No. 15-cv-9278-MWF, 2016 WL 9045479 (C.D. Cal. Feb. 5, 2016) ... 19

*Heerde v. Learfield Commc'ns, LLC*,
No. 2:23-cv-04493-FLA-MAAx, 2024 WL 3573874 (C.D. Cal. July 19, 2024) ... 14

*Herd v. Airbus SAS*,
No. 2:17-cv-05001-SVW-MRW, 2017 WL 6504162 (C.D. Cal. Dec. 11, 2017) ... 17

*Jackson v. Fandom, Inc.*,
No. 22-cv-04423-JST, 2023 WL 4670285 (N.D. Cal. July 20, 2023) ... 13, 14

*Levitt v. Yelp! Inc.*,
765 F.3d 1123 (9th Cir. 2014) ... 9

*Lockman Found. v. Evangelical All. Mission*,
930 F.2d 764 (9th Cir. 1991) ... 18

*Lueck v. Sundstrand Corp.*,
236 F.3d 1137 (9th Cir. 2001) ... 17, 18, 19

*Martinez v. Rumble, Inc.*,
No. 8:22-cv-2237-SDM-AAS, 2023 WL 9473891 (M.D. Fla. Dec. 22, 2023) ... 17

*McGechie v. Atomos Ltd.*,
No. 2:22-cv-01812-DJC-DB, 2024 WL 1054924 (E.D. Cal. Mar. 11, 2024) ... 18

*Mollett v. Netflix, Inc.*,
795 F.3d 1062 (9th Cir. 2015) ... 10

*Moser v. Benefytt, Inc.*,
8 F.4th 872 (9th Cir. 2021) ... 12

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) ... 10

*Osheske v. Silver Cinemas Acquisition Co.*,
700 F.Supp.3d 921 (2023) (C.D. Cal. 2023) ... 8

*Papasan v. Allain*,
478 U.S. 265 (1986) ... 9, 10

*Peter Marco, LLC v. Banc of Am. Merchant Servs., LLC*,
No. 2:22-cv-01486-SVW, 2022 WL 3098703 (C.D. Cal. May 19, 2022) ... 19

*Ridgeway v. Walmart Inc.*,
946 F.3d 1066 (9th Cir. 2020)........................................................................................ 12

*Sellers v. Bleacher Rep., Inc.*,
No. 23-cv-00368-SI, 2023 WL 4850180 (N.D. Cal. July 28, 2023)................................ 12, 13

*Tansey v. Cochlear Ltd.*,
No. 13-cv-4628 SJF SIL, 2014 WL 4676588 (E.D.N.Y. Sept. 18, 2014) ............................. 18

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........................................................................................................ 7, 8, 9

*Tuazon v. R.J. Reynolds Tobacco Co.*,
433 F.3d 1163 (9th Cir. 2006)........................................................................................ 17

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017)................................................................... 10, 11

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016, 1041 N.D. Cal. 2014 ........................................................................ 8

**Statutes**

18 U.S.C. § 2710 ............................................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(1).................................................................................................... 7

Fed. R. Civ. P. 12(b)(6).................................................................................................... 9

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiffs' sole claim in this lawsuit—an alleged violation of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. §§ 2710, *et seq.*—stretches the statute far beyond its text or purpose. As the Amended Complaint acknowledges, the VPPA was passed in the wake of the nomination of a Supreme Court justice whose video viewing habits had been disclosed by a video tape rental company. (Dkt. 19 ¶ 15.) The statute was enacted to prevent unauthorized disclosure of videos consumers view "when they are at home." (*Id.* (quoting S. Rep. No. 100-599, at 5-6 (1988)).) Plaintiffs' claim departs from the VPPA's text and purpose in three ways: (a) they complain about unauthorized disclosure of video clips for which they obtain a commercial license to display to audiences for their own professional projects—not videos to watch in their own homes; (b) they are not suing a "video tape servicer provider" as the VPPA defines that term, but an Australian company, Envato, whose business involves offering professionals like Plaintiffs millions of digital assets of all kinds—music, photos, website templates, and similar creative assets of which videos are a relatively small component; and (c) at most, they can only allege that Envato discloses, through Envato's alleged installation of the Meta pixel on its website, their encrypted Facebook IDs, which is insufficient to constitute an unauthorized disclosure of personal information for purposes of the VPPA.

Plaintiffs' departures from the VPPA's text and purpose are fatal to their claim. Because they seek to apply the VPPA not to their private viewing of videos but to their use of a commercial license to display videos they download to the public, Plaintiffs cannot allege that they suffered any injury to any cognizable privacy interests. That distinguishes this case from cases that have found standing to assert claims brought under the VPPA. Unlike those cases, where Plaintiffs can point to their in-home viewing habits as a privacy interest, Plaintiffs' inability to point to any privacy interest that was allegedly invaded makes this, at best, a run-of-the-mill case for statutory damages with no injury—the kind of case the Supreme Court has said federal courts lack jurisdiction to hear.

Plaintiffs' other departures from the VPPA's text—their inability to adequately plead that

Envato is a "video tape service provider" or that personally identifiable information ("PII") about them was disclosed—preclude Plaintiffs from being able to plead necessary elements of their only claim. Failure to plead either element is sufficient to warrant dismissal of Plaintiffs' Amended Complaint.

Even if Plaintiffs could overcome these jurisdictional and pleading hurdles, they face another bar to their claim: they consented to the disclosure about which they complain. As Plaintiffs acknowledge, they subscribed to Envato's service. In the process of doing so, they necessarily agreed to Envato's Terms and Conditions and Privacy Policy. Taken together, those documents disclosed to Plaintiffs that Envato shares information about their page views and video downloads in the very manner Plaintiffs challenge, and gave Plaintiffs the opportunity to opt out of such sharing.

On top of all of these substantive deficiencies in Plaintiffs' claims, this Court is not even the proper forum for Plaintiffs' claim. Despite their agreement to litigate any dispute with Envato in Australia (where Envato is headquartered and conducts its business), Plaintiffs filed suit in California, based on alleged conduct Envato took in Australia. Even without addressing the merits of Plaintiffs' claims, therefore, the Court can and should dismiss Plaintiffs lawsuit because Australia is the more appropriate forum to litigate any claims against Envato.

# I. BACKGROUND

## A. Envato Licenses Creative Assets To Professionals

Envato is an Australian company. (Dkt. 19 ¶ 10.) Plaintiffs cite LinkedIn to allege, on information and belief, that Envato maintains an office in Los Angeles, California. (Dkt. 19 ¶¶ 10, 12 & n.8.) But Envato's website, which Plaintiffs cite extensively throughout the Amended Complaint, contradicts that allegation. Envato's only offices are located in Australia and Mexico.[1] Envato does not currently have a Los Angeles office, and the individuals identified in the Amended Complaint as Envato's Vice President of Engineering and Envato's United States Sales and Account Management professional (Dkt. 19 ¶ 12) work remotely and not from any Envato office in the United States.

[1] McPherson Decl. Ex. A at 4 (https://www.envato.com/about/ (last accessed Aug. 6, 2024)).

Envato offers content creators and design professionals commercial licenses to creative assets and design templates. (*See* Dkt. 19 ¶¶ 2, 4, 18.) Envato's customers range from "freelancers and creative agencies" to "some of the world's most recognized brands."[2] (*See* Dkt. 19 ¶ 2.) Those creative professionals can purchase licenses to creative assets through a subscription model, called Envato Elements, or buy individual assets as needed, from Envato Market.[3] (*See* Dkt. 19 ¶¶ 19-20.) Plaintiffs allege they subscribed to Envato Elements. (Dkt. 19 ¶¶ 52, 58.)

Envato's catalogue of creative assets is vast.[4] (*See* Dkt. 19 ¶ 4, Figure #1.) Envato offers nearly 20 million creative assets for design professionals across fourteen categories: stock video, video templates, music, sound effects, graphic templates, graphics, presentation templates, photos, fonts, add-ons, web templates, CMS templates, WordPress, and 3D.[5] Among those categories, photos represent over half of the individual creative assets. Envato's stock video and video templates—accounting for only about 30 percent of its catalogue[6]—include "high-quality stock videos and b-roll footage . . . to add that professional touch to your edits,"[7] as well as "premium templates for video editing and motion design . . . to create polished videos."[8] One such stock video used for professional editing is titled "Brilliant Sunrise with Clouds Timelapse." (*See* Dkt. 19 ¶ 41, fig. 4.)

---

[2] McPherson Decl. Ex. A at 1 (https://www.envato.com/about/ (last accessed Aug. 6, 2024)).
[3] McPherson Decl. Ex. B at 3 (https://www.envato.com/products/ (last accessed Aug. 6, 2024)).
[4] *Id.*
[5] McPherson Decl. Ex. C at 1 (https://elements.envato.com/all-items (last accessed Aug. 6, 2024)).
[6] *Id.*
[7] McPherson Decl. Ex. D at 1 (https://elements.envato.com/stock-video (last accessed Aug. 6, 2024)).
[8] McPherson Decl. Ex. E at 1 (https://elements.envato.com/video-templates (last accessed Aug. 6, 2024)).

Content creators and design professionals obtain licenses from Envato to republish those assets for "commercials, corporate videos, video greetings for customers," and the like.[9] For example, a professional from radio company iHeartMedia uses Envato for "bigger projects that involve commercial work because the wide variety of video templates that are available are super easy to use."[10] Those video templates include a simple, 20-second video titled "Top Logo Reveal" that a designer would use in an advertising or marketing project:[11]




The common theme in Envato's audience, regardless of whether the user is "a designer working on client projects or a small business owner who's keen to take control of [their] company's visual identity,"[12] is that the projects using Envato assets are meant for public consumption—branding, marketing, and advertising projects.

Like Envato's other subscribers, Plaintiffs Plotsker and Kleeman pay for licenses to the

[9] McPherson Decl. Ex. A at 2 (https://www.envato.com/about/ (last accessed Aug. 6, 2024)).
[10] *Id.*
[11] McPherson Decl. Ex. F at 1 (https://elements.envato.com/top-logo-reveal-LY3Q3RD (last accessed Aug. 6, 2024)).
[12] McPherson Decl. Ex. G at 1("10 Biggest Logo Design Trends for 2021" blog post (last accessed Aug. 6, 2024)).

creative assets that Envato makes available to professionals for republication. (*See* Dkt. 19 ¶¶ 8-9, 52, 58.) According to Plaintiffs, they use Envato to "among other things, watch and download prerecorded videos." (*Id.* ¶¶ 53, 59.)

Plaintiffs allege that Envato has integrated into its website Meta's "Tracking Pixel," which "captures an action" from a user's website activity and "sends a record" of that activity to Meta Platforms Inc. (formerly known as Facebook). (*Id.* ¶¶ 31, 35-43.) Plaintiffs allege that Envato collected and transmitted to Meta their or unnamed class members' IP addresses and the c_user, _fr, and _datr cookies, and page views and button clicks. (*Id.* ¶ 36.) According to Plaintiffs, when someone is logged into Facebook and browsing Envato's website, c_user cookies transmit unencrypted Facebook IDs to Facebook, along with the titles of the video clips they have viewed or downloaded, as revealed by their web page activity. (*Id.* ¶ 43.) When a browser has been logged out of Facebook, the allegedly transmitted material is a "smaller set of cookies," or the "fr_cookie," which contains "an encrypted Facebook ID and browser identifier." (*Id.* ¶ 47.) Plaintiffs do not allege that they were logged in to Facebook at the time they were allegedly viewing and downloading videos from Envato's website.

### B. Plaintiffs Agreed To Envato's Terms Of Service

By subscribing to Envato Elements (*id.* ¶¶ 52, 58), Plaintiffs each agreed to Envato's Terms and Conditions.[13] Among those Terms, which are provided on Envato's website, Envato specifies that Australian law governs the agreement, and that users consent to jurisdiction in Australia:

> 48. Applicable Laws: We control and operate Envato Elements from our offices in Australia. The laws of Victoria, Australia govern these terms, and you submit to the jurisdiction of the courts there for the resolution of any dispute between us.

(McPherson Decl. Ex. I at § 48 (Envato User Terms, Oct. 25, 2018).) The Terms also incorporate Envato's Privacy Policy:

> 28. Privacy: We respect your privacy and process your information in accordance with our Privacy Policy.

[13] McPherson Decl. Ex. H at 1 (https://elements.envato.com/subscribe/ ("By creating an account, you agree to our Terms and Conditions.").

> Our Privacy Policy explains how we deal with your information.

(*Id.* at § 28.)

The Privacy Policy, included in the Terms through hyperlink, describes the type of information that Envato collects:

> 4. We collect certain personal information about visitors and users of our Sites.
>
> 5. The most common types of information we collect include things like: user-names, member names, email addresses, IP addresses, other contact details, survey responses, blogs, photos, payment information such as payment agent details, transactional details, tax information, support queries, forum comments (if applicable), content you direct us to make available on our Sites (such as item descriptions), **your actions on our Sites (including any selections or inputs into items)** and web and email analytics data. We will also collect personal information from job applications (such as, your CV, the application form itself, cover letter and interview notes).

(McPherson Decl. Ex. J at §§ 4-5 (Privacy Policy, Jan. 1, 2019 (emphasis added)).)

The Privacy Policy also specifies how that personal information is collected:

> 6. We collect personal information directly when you provide it to us, **automatically as you navigate through the Sites**, or through other people when you use services associated with the Sites.

(*Id.* § 6 (emphasis added).)

The Privacy Policy also links to Envato's policy concerning its use of cookies:

> 16. For more information about how we use cookies, web beacons and similar technologies see our cookie policy here and for more general information on cookies, see http://www.allaboutcookies.org.

(*Id.* § 16.)

Included in that Cookie Policy is an explanation of Envato's general purpose for using tracking technologies: among other things, "[t]o gather relevant data that helps us deliver marketing and advertising content relevant to your interests." (McPherson Decl. Ex. K at § 4 (Cookie Policy, Jan. 8, 2019).) The policy also notes that a customer "can change your web

browser's settings to reflect your cookie preferences" and "can opt out of third party advertising cookies at any time," and provides a link to do so. (*Id.*)

## II. ARGUMENT

### A. The Amended Complaint Should Be Dismissed Under Fed. R. Civ. P. 12(b)(1) For Lack Of Standing.

A court must dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1), if a plaintiff does not satisfy Article III's standing requirements. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122-23 (9th Cir. 2010).

"[T]o establish standing, a plaintiff must show [] that he suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). In the context of statutory claims, there is no Article III standing absent "plaintiff's suffering [of] concrete harm" as a result of "defendant's violation of" the statute. *Id.* at 425-26. "[U]nder Article III, an injury in law is not an injury in fact." *Id.* at 427. "[C]oncrete injuries" most obviously include "physical harms and monetary harms," but also include "injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," such as "disclosure of private information." *Id*. at 425.

No such concrete harm exists here. Plaintiffs' theory of injury rests on Envato's allegedly "unlawful disclosure of Plaintiff Kleemann's 'personally identifiable information', in violation of 18 U.S.C. § 2710 (b)." (Dkt. 19 ¶ 13(h).) And indeed, some courts have found that plaintiffs have Article III standing to assert a claim for violation of the VPPA, *see, e.g.*, *Carter v. Scripps Networks, LLC*, 670 F. Supp. 3d 90, 95 (S.D.N.Y. 2023), but those courts' conclusions rested on completely different allegations. Those courts considered claims by plaintiffs alleging that videos they viewed privately were disclosed without their authorization. *See, e.g., id.* (finding plaintiffs had standing where their personal information and viewing activities of home, lifestyle, and home improvement videos from HGTV were disclosed).

Plaintiffs here cannot allege anything like that. The "consumer" that the VPPA is intended to protect is an individual who views videos in private, with the expectation that what they view will remain private. (Dkt. 19 ¶ 15.) As alleged, Envato does not serve such an individual. Envato

markets specifically to "content creators" (Dkt. 19 ¶ 2) like Plaintiffs, "freelancers and creative agencies," as well as "some of the biggest brands on the planet."[14] These content creators are not viewing stock videos and b-roll footage for private consumption; they are viewing such content for the express purpose of using and repurposing that content for public use. To that end, Envato's subscribers obtain commercial licenses to use stock video and video templates to create videos for further public display.

Far from VPPA's effort to protect "*private video viewing habits*," *Osheske v. Silver Cinemas Acquisition Co.*, 700 F.Supp.3d 921, 927 (2023) (C.D. Cal. 2023) (emphasis in original) (finding that the VPPA does not apply to films viewed in a public movie theater), *appeal docketed* No. 23-3882 (9th Cir. Nov. 30, 2023), then, Plaintiffs' VPPA claim here does not bear "a close relationship" to traditional privacy harms. Plaintiffs thus cannot frame their Amended Complaint as one grounded on "disclosure of private information" or "intrusion upon seclusion," the kinds of "historical or common-law analogue[s]" *TransUnion LLC* identified as sufficient to confer standing from some limited kinds of statutory violations. 594 U.S. at 424-25. As courts since *TransUnion* have explained, in the context of informational privacy, only the "dissemination or misuse of sensitive and confidential information" is protected. *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1041 N.D. Cal. 2014); *see also Barclift v. Keystone Credit Servs., LLC*, 585 F. Supp. 3d 748, 759 (E.D. Pa., 2022) ("Barclift has not alleged that she suffered a concrete injury because her private information was never publicized."). There is nothing "sensitive" or "confidential" about content that third-party creators intend to share with the public, or about content with titles such as "light-transitions-6UXUBH3"[15] that offer no information at all about a person's viewing habits.

*Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 984 (9th Cir. 2017), does not compel a contrary conclusion. While that case described the VPPA as codifying "a context-specific extension of the substantive right to privacy," it did so before the Supreme Court's *TransUnion*

---

[14] McPherson Decl. Ex. A at 3 (https://www.envato.com/about/ (last accessed Aug. 6, 2024)).
[15] McPherson Decl. Ex. M at 1 (https://elements.envato.com/light-transitions-6UXUBH3 (last accessed Aug. 8, 2024)). This is not to suggest that Plaintiffs downloaded this video. It is merely an example of the type of video asset available to Plaintiffs and other subscribers on Envato Elements.

decision and outside of the unique set of allegations Plaintiffs present here. *Eichenberger*, like other VPPA cases, considered claims about private viewing habits, *see id.* at 982-84 (pre-supposing that a violation of the VPPA involves disclosure of "otherwise private information" based on plaintiff's allegations that they watched "sports-related news and events" on a television streaming-device application), not what plaintiffs allege here—viewing of videos to obtain commercial license for eventual re-display to the public of that same video content.

And as the Supreme Court demonstrated in *TransUnion*, standing cannot be determined based on a statute writ large; it must be determined based on the particular claims brought by particular plaintiffs. In that case, for example, some members of the plaintiff class—those who could point to an invasion of their privacy interests—had standing to assert claims under the Fair Credit Reporting Act, while other members of the class—those who could not point to any such privacy interests—did not. 594 U.S. at 433. So too here, while some plaintiffs may have standing to bring a VPPA claim against other defendants in other contexts, these Plaintiffs do not, because they cannot point to any privacy interests at stake.

None of the other VPPA cases suggests otherwise. No court has found that a plaintiff has standing to state a claim under the VPPA based on the activity that they undertake for work to create publicly consumed media or websites. Nor should this Court: the circumstances here are well outside the scope of the VPPA's protection for private, at-home viewing, and require this case to be dismissed.

### B. The Amended Complaint Should Be Dismissed Under Fed. R. Civ. P. 12(b)(6) For Failure To State A Claim.

To overcome a Rule 12(b)(6) motion to dismiss after *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), Plaintiffs' "factual allegations [in the complaint] must . . . suggest that the claim has at least a plausible chance of success." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (cleaned up).

On a motion to dismiss, courts must construe the complaint in the light most favorable to the plaintiff and "take all the factual allegations in the complaint as true." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). But courts "are not bound to accept as true a legal conclusion couched as a

factual allegation." *Id.*; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (requiring courts to "discount[]" allegations that "do nothing more than state a legal conclusion" when ruling on a motion to dismiss (quoting *Iqbal*, 556 U.S. at 662)).

"[I]n order to plead a plausible claim under section 2710(b)(1), a plaintiff must allege that (1) a defendant is a video tape service provider, (2) the defendant disclosed '[PII] concerning any customer' to 'any person,' (3) the disclosure was made knowingly, and (4) the disclosure was not authorized by section 2710(b)(2)." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1066 (9th Cir. 2015). Plaintiffs fail to do so here.

**1. Envato Is Not A Video Tape Service Provider Under The VPPA.**

Plaintiffs' claim should be dismissed because Envato, a design resources website for professional creators, does not satisfy the definition of a video tape service provider under the VPPA. A "'video tape service provider' means any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). For Envato to be "engaged in the business" of audio-visual services Plaintiffs must "sufficiently plead the defendant's involvement 'connotes a particular field of endeavor' or a 'focus of the defendant's work.'" *Cantu v. Tapestry, Inc.*, 697 F. Supp. 3d 989, 993 (S.D. Cal. 2023) (quoting *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017)). "[T]o be engaged in the business of delivering video content, the defendant's product must not only be *substantially* involved in the conveyance of video content to consumers but also *significantly* tailored to serve that purpose." *In re Vizio*, 238 F. Supp. 3d. at 1221 (emphasis added) (finding that Smart TV seller was a video tape service provider where it relied on the profits of consumer data sales as an integral part of its business model). "Courts in the Ninth Circuit consistently recognize that delivering video content must be central to the defendant's business or product for the VPPA to apply." *Cantu v. Tractor Supply Co.*, No. 2:23-CV-3027-HDV-JC, 2024 WL 1601257, at *3 (C.D. Cal. Mar. 21, 2024); *see also* S. Rep. No. 100-599, at 12 (1988) (the definition of PII "includes the term 'video' to make clear that simply because a business is engaged in the sale or rental of video materials or services [*sic*] does

not mean that all of its products or services are within the scope of the bill.").

Plaintiffs cannot allege that Envato satisfies these requirements. Plaintiffs allege that Envato "operates a stock video subscription service by which its users can watch, license and download pre-recorded videos." (Dkt. 19 ¶ 18.) Envato's website does, indeed, include stock videos and video templates. But Plaintiffs want the Court to ignore that this is only a portion of what Envato offers. As is clear from Envato's website, which the Amended Complaint cites nearly 20 times, Envato focuses on helping designers with many different kinds of projects. In fact, Envato's stock video and video templates are dwarfed by the quantity of its other creative assets. Stock video and video templates represent only two of fourteen categories of assets, and only about a third of the individual assets available.[16] And designers could pay for creative assets on Envato without ever downloading a single video.

If delivering video content is not necessary to the Envato experience, Envato is hardly "significantly tailored" to delivering video content. *In re Vizio*, 238 F. Supp. 3d. at 1221. At most, Envato is only "peripherally or passively involved in video content delivery," which is not sufficient to "fall within the statutory definition of video tape service provider." *In re Vizio*, 238 F. Supp. 3d at 1221-22; *see also Carroll v. Gen. Mills, Inc.*, No. 23-cv-1746-DSF-MRWx, 2023 WL 4361093, at *4 (C.D. Cal. June 26, 2023) (defendant was not a "video tape service provider" because "[n]othing suggest[ed] that Defendant's business [was] centered, tailored, or focused around providing and delivering audiovisual content"); *Cantu v. Tapestry, Inc.*, No. 22-cv-1974-BAS-DDL, 2023 WL 4440662, at *8 (S.D. Cal. July 10, 2023) (allegation that defendant's "business model involves monetizing instances in which consumers watch videos" was insufficient because it failed to plausibly suggest that defendant's enterprise was "'significantly tailored' to achieving that purchase").

While some non-binding courts have concluded that any prerecorded video content is enough to trigger application of the VPPA, inapposite facts blunt the persuasive value of those

[16] McPherson Decl. Ex. C, https://elements.envato.com/all-items (As of August 6, 2024: Stock Video (6,490,875); Video Templates (119,113); Music (193,099); Sound Effects (742,984); Graphic Templates (318,729); Graphics (205,245); Presentation Templates (144,755); Photos (10,879,769); Fonts (54,478); Add-ons (27,478); Web Templates (5,991); CMS Templates (1,600); WordPress (7,639); 3D (273,665)).

cases. For example, the court in *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019), denied a motion to dismiss because it was "plausible" to conclude that Facebook's business is significantly tailored to the business of delivering video content based on allegations that Facebook "regularly delivers" video content, "including from content providers like Netflix." No such allegations about the frequency of delivery are present here, nor do Plaintiffs allege that Envato delivers the type of content meant for private consumption, such as content from Netflix. And in *Sellers v. Bleacher Rep., Inc.*, No. 23-cv-00368-SI, 2023 WL 4850180, at *6 (N.D. Cal. July 28, 2023), the court also denied a motion to dismiss as premature based on "factual questions about the degree to which Bleacher Report's business model is tailored to delivery of audio visual materials." There, defendant argued that the VPPA should not apply because it is a news organization without addressing the quantity of video content relative to other offerings, as Envato does here.

In the absence of an authoritative holding on just how much video content a plaintiff is required to plead to turn a defendant into a video tape service provider and survive a motion to dismiss, the Court should decline to follow these cases. Envato is different from Facebook or Bleacher Report in obvious ways: while Facebook and Bleacher Report feature substantial video content central to its website's purposes, Envato's stock video and video templates are limited—both in relative quantity compared to other offerings and in the purpose for which it offers them.

**2. Plaintiffs Do Not Allege Disclosure Of PII.**

Even taking the Amended Complaint's allegations as true, Plaintiffs can do no more than speculate that their PII has been disclosed. Indeed, the Amended Complaint is so carefully drafted that Plaintiffs do not even allege that their PII was, in fact, disclosed. Plaintiffs plead only that *either* their *or* a class members' PII was disclosed. (Dkt. 19 ¶ 36.) At this stage, though, the hypothetical injury of other putative class members is not enough: before any class is certified, only the named plaintiffs' allegations matter. *See Moser v. Benefytt, Inc.*, 8 F.4th 872, 877 (9th Cir. 2021) ("[A] class action, when filed, includes only the claims of the named plaintiff."); *Ridgeway v. Walmart Inc.*, 946 F.3d 1066, 1076 (9th Cir. 2020) (noting that when "the class ha[s] not yet been certified, . . . the putative class members [are] not parties to the case").

Considering only allegations applicable to Plaintiffs themselves, Plaintiffs cannot adequately allege any disclosure of their PII. As the Ninth Circuit has held, to state a claim under the VPPA, a plaintiff must allege the disclosure of "information that readily permits an ordinary person to identify a particular individual as having watched certain videos." *Eichenberger*, 876 F.3d at 985 (cleaned up). This "ordinary person" standard mirrors the purpose of the VPPA, which "focuses on what information a video service provider knowingly discloses" as opposed to "what the recipient of that information decides to do with it." *Id.* As such, a numeric identifier alone, even when coupled with the names of videos that a plaintiff watched, does not constitute PII, as an ordinary person would not be able to readily use such information to identify an individual. *Id.* at 986.

Plaintiffs cannot satisfy that standard here. That is because they do not allege the transmission of anything other than an encrypted Facebook ID to Meta. Recall that Plaintiffs do not allege that they were logged in to Facebook at the time they purportedly viewed and downloaded videos. (*See supra* Section I.A.; Dkt. 19 ¶¶ 51-61.) Plaintiffs acknowledge that if a browser is logged out of Facebook, the transmitted cookies contain an encrypted Facebook ID. (Dkt. 19 ¶¶ 46-47.) Plaintiffs even copy the random string of characters for the encrypted Facebook ID without redaction, unlike the Facebook ID allegedly transmitted in c_user cookies. (*Compare* Dkt. 19 ¶ 46, fig. #6 *with* Dkt. 19 ¶ 43, fig. #5.) Plaintiffs thus tacitly admit that where only an encrypted Facebook ID is disclosed, an ordinary person could not "identify a particular individual as having watched certain videos," and no PII was disclosed for purposes of the VPPA. *Eichenberger*, 876 F.3d at 985.

Because the Facebook IDs allegedly disclosed were encrypted, cases that have held that Facebook IDs are PII are distinguishable. *See, e.g.*, *Sellers*, 2023 WL 4850180, at *4 (finding a Facebook ID transmitted through an unencrypted c_user cookie "is information sufficient to identify a person"); *Jackson v. Fandom, Inc.*, No. 22-cv-04423-JST, 2023 WL 4670285, at *4 (N.D. Cal. July 20, 2023) ("[T]he Court may reasonably infer that an ordinary person could readily identify a specific Facebook user on the basis of a Facebook Profile ID.").

And even if Plaintiffs could allege that their *un*encrypted Facebook IDs were disclosed,

Plaintiffs do not allege that their Facebook pages contain any personal information, such as their names or email addresses. In the absence of such allegations, "the complaint does not adequately allege that [disclosure of Plaintiffs' Facebook IDs] result[s] in the sharing of any personal information." *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023); *Heerde v. Learfield Commc'ns, LLC*, No. 2:23-cv-04493-FLA-MAAx, 2024 WL 3573874, at *4 (C.D. Cal. July 19, 2024) (dismissing VPPA claim for failure to allege Facebook pages contained viewable PII that could be used to identify plaintiffs). Nor do Plaintiffs allege how "an ordinary person" could identify their video viewing behavior based on information transmitted to Facebook. (Dkt. 19 ¶ 39.)

**3. Plaintiffs Consented To Envato's Recording And Use Of Information.**

Alternatively, assuming Plaintiffs could adequately allege the disclosure of PII—they do not—the Amended Complaint should be dismissed because Plaintiffs consented to Envato's use of the Meta pixel and its alleged disclosure of PII. The VPPA allows a video tape service provider to disclose PII of a consumer with the consumer's "informed, written consent." 18 U.S.C. § 2710(b)(2)(B). Envato's website satisfies the VPPA's requirements: it obtains consent (1) "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer," (2) "at the time disclosure is sought" or "given in advance for a set period of time not to exceed two years," and (3) it provides the consumer with the ability to opt out from disclosures "in a clear and conspicuous manner." *Id.* The Ninth Circuit has not yet construed this portion of the statute.[17]

**a) Envato users consent to the User Terms and Privacy Policies when they create an account.**

Plaintiffs allege that they purchased a digital subscription to Envato Elements in order to

[17] While one non-binding authority has held that consent must be sought "connected with video purchases and no other privacy topic" and obtained "separately from the consumer's agreement to the retailer's terms of use, general privacy policy, and the commercial terms of the purchase," the same court read the statute to mean that the defendant in that instance must have disclosed its "intent to share [plaintiffs' personally identifiable information] *with Facebook*." *Cappello v. Walmart Inc.*, No. 18-cv-06678-RS, 2019 WL 11687705, at *2 (N.D. Cal. Apr. 5, 2019) (emphasis added). Because the statutory language does not support such a high burden, that court's logic, unsupported by a single citation, should be disregarded.

watch and download videos (Dkt. 19 ¶¶ 52, 58), requiring them to create a user account. By creating an account, Plaintiffs consented to the Envato User Terms and Privacy Policy and Cookie Policy.

Any time a user creates an account with Envato Elements, they agree to the User Terms. Where a user can enter an email and password to create an account, the archived web page states, "By creating an account you agree to our Privacy Policy. By creating an account you agree to our Terms and Conditions,"[18] with a check box by each statement. Underneath that text appears a large "Set Up Your Account" button. Thus, a user cannot create an account—a requirement to download Envato video content—without agreeing to the User Terms, which include both the Privacy Policy and Cookie Policy. (*See supra* Section I.B.)

In addition to agreeing to these terms at the time of the account creation, a user reaffirms their agreement to these terms with every sign-in. A similar message appears underneath the entry fields on the archived sign-in page.[19]

Courts uphold agreements as valid and enforceable across a wide range of contexts where, as here, the user is required to affirmatively acknowledge the agreement before proceeding with use of the website. *See, e.g.*, *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835, 838–40 (S.D.N.Y. 2012) (enforcing forum selection clause in website's terms of service where a notice below the "Sign Up" button stated, "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service," and user had clicked "Sign Up").

**b) The Privacy Policy specifically addresses the alleged disclosures.**

Envato's Privacy Policy—to which users must agree in order to create an Envato Elements account and each time they log into their account—notifies subscribers like Plaintiffs that Envato shares personal information with third parties. The Privacy Policy outlines the type of personal information that Envato collects, how it is collected, how Envato uses personal

[18] McPherson Decl. Ex. H (https://elements.envato.com/subscribe (archived web page from the Wayback Machine on July 19, 2019)).

[19] McPherson Decl. Ex. L (https://elements.envato.com/sign-in (archived web page from archive.is on Feb. 16, 2023) ("Envato collects and uses personal data in accordance with our Privacy Policy. By creating an account, you agree to our Terms & Conditions.").

information, and links to Envato's Cookie Policy. (*See* McPherson Decl. Ex. J at 1-3, 5.)

In no uncertain terms, the Privacy Policy states: Envato "will use third party advertising companies to serve ads based on prior visits to our Sites." (*Id.* § 18.) The Privacy Policy then incorporates Envato's Cookie Policy, stating that users can "[r]ead more about your options" there. *Id.* The Cookie Policy further explains how Envato uses other tracking technology, such as cookies and "web beacons," which the policy explains "are embedded invisibly on web pages and are about the size of a single pixel" and used to "track the movements of web users between pages and websites." (McPherson Decl. Ex. K at 1.) And the Cookie Policy reiterates that Envato uses these tracking technologies to "gather relevant data that helps us deliver marketing and advertising content relevant to your interests." (*Id.*)

The Cookie Policy also informs users how they can change cookie preferences and opt out of third party advertising cookies. (*Id.* at 2.) The Cookie Policy notes that "[t]here are ways [a user] can control [their] cookies preferences and set whether [they] want to accept or reject cookies," linking to options to "change [their] web browser's settings to reflect . . . cookie preferences" and an option to "opt out of third party advertising cookies at any time." (*Id.* at 1-2.) The Cookie Policy cautions, however, that "there might be some functionality that will not work or not operate correctly on our sites" if a user "disable[s] cookies, web beacons and similar technologies." (*Id.* at 2.)

Thus, the Privacy Policy and incorporated Cookie Policy—to which Plaintiffs consented when they created their respective accounts and each time they logged in—disclose that Plaintiffs' usage data may be tracked, disclose that such data might be used for purposes including advertising, and provide information on how to disable the technology. The Amended Complaint omits any allegation that Plaintiffs never gave Facebook consent to install the C-User cookies and collect Plaintiffs' browsing information. Because Plaintiffs chose not to opt out of Envato's use of Meta's tracking pixel, they necessarily consented to the pixel's disclosure of any PII. As such, Plaintiffs cannot state a claim under the VPPA, which only prohibits unauthorized disclosure of information. 18 U.S.C. § 2710(b)(2)(B).

### C. The Amended Complaint Should Be Dismissed Because Australia Is A More Convenient Forum.

"A district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504 (1947)). "In dismissing an action on forum non conveniens grounds the court must examine: (1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal." *Id.* "[A] defendant bears the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011).

#### 1. Australia Provides An Adequate Forum For This Dispute.

"[A]n alternative forum is available where the defendant is amenable to service of process and the forum provides 'some remedy' for the wrong at issue." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1178 (9th Cir. 2006) (citation omitted).

Defendants are amendable to service of process in Australia, where Defendants reside. (Dkt. 19 ¶ 10 (Defendants are "Australian Proprietary Limited Companies").)

And Australia provides a remedy for the alleged wrongdoing. Although the VPPA does not provide for the United States as the exclusive venue,[20] it would be "completely nonsensical" to require a showing that the VPPA is available as a cause of action in Australia. *Herd v. Airbus SAS*, No. 2:17-cv-05001-SVW-MRW, 2017 WL 6504162, at *2 (C.D. Cal. Dec. 11, 2017). Rather, a foreign forum is adequate "unless it offers no practical remedy for the plaintiffs complained of wrong." *Lueck*, 236 F.3d 1137 at 1144.

Plaintiffs could assert their purported privacy interests by invoking Australia's privacy laws, such as the Privacy Act of 1988, "which restricts dissemination of personal information for

[20] "Any person aggrieved by any act of a person in violation of this section may bring a civil action in a United States district court." 18 U.S.C. § 2710; *see also Martinez v. Rumble, Inc.*, No. 8:22-CV-2237-SDM-AAS, 2023 WL 9473891, at *1 (M.D. Fla. Dec. 22, 2023) (dismissing VPPA claims brought in the United States, rather than Ontario, contrary to the choice of law and forum provisions), *appeal dismissed sub nom. Buechler v. Rumble, Inc.*, No. 24-10294-DD, 2024 WL 1846842 (11th Cir. Mar. 20, 2024).

a purpose other than the purpose for which the information was first obtained." *Tansey v. Cochlear Ltd.*, No. 13-cv-4628 SJF SIL, 2014 WL 4676588, at *1 (E.D.N.Y. Sept. 18, 2014). "Because the Australian causes of action are comparable to those plaintiffs assert here, this case does not present the 'rare circumstance' in which the remedy provided by the foreign forum is clearly inadequate." *Glob. Med. Sols., Ltd v. Simon*, No. 12-cv-04686-MMM (FMOx), 2013 WL 12371339, at *6 (C.D. Cal. Jan. 10, 2013).

That is not to say, of course, that Plaintiffs would succeed on any claim under Australian law. That is not the test for a finding that Australia is an adequate forum, however. All that is required is that Australia offers Plaintiffs an available remedy and a fair judicial process. *Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 768 (9th Cir. 1991) (affirming a ruling that a forum is adequate despite different court procedure and available claims compared to the United States). Courts routinely recognize that Australia is an adequate forum. *See McGechie v. Atomos Ltd.*, No. 2:22-cv-01812-DJC-DB, 2024 WL 1054924, at *7 (E.D. Cal. Mar. 11, 2024) ("Australia is a common law jurisdiction which has a robust legal system." (declining to dismiss for other reasons)).

**2. The Balance Of Private And Public Interest Factors Also Favors Dismissal.**

To determine whether dismissal on forum non conveniens grounds is appropriate, the Court must evaluate the private interest factors: (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Lueck*, 236 F.3d at 1145 (cleaned up).

These private interest factors weigh in favor of dismissal here. Envato is located in Australia, where many of their employees—likely witnesses in this case—also reside. As this Court is halfway around the world from where Envato and potential witnesses are located, it is not convenient to Defendants and would make the trial of this case more difficult and expensive.

None of the other factors counter this weight. While Plaintiff Kleeman resides in

California, Plaintiff Plotsker resides in Florida, and both seek to represent a putative nationwide class of consumers, undermining any gravitational pull towards California in particular.

Plaintiffs' agreement to litigate any dispute with Envato in Australia also lessens the weight of any inconvenience to them. *See Globatrac LLC v. JB Squared Ltd.*, No. 15-cv-9278-MWF (SPx), 2016 WL 9045479, at *3–4 (C.D. Cal. Feb. 5, 2016) (finding jurisdiction over a foreign plaintiff where plaintiff consented to the courts of the foreign country "in the nonexclusive choice of forum provision of the Agreement"). In the analogous context of a transfer under 28 U.S.C. § 1404(a), which codifies the doctrine of forum non conveniens and assesses the same private and public interest factors, courts "weigh permissive forum-consent clauses as a 'significant factor' favoring a transfer," *D.L. Markham, DDS, MSD, Inc. v. Variable Annuity Life Ins. Co.*, No. 2:21-cv-00007-TLN-KJN, 2022 WL 891290, at *9 (E.D. Cal. Mar. 25, 2022). As discussed, (*see supra* Section I.B), Plaintiffs agreed to the User Terms when they created their accounts and each time they signed in. By agreeing to the User Terms, Plaintiffs agreed to litigate any dispute in Australia. McPherson Decl., Ex. I. § 48 ("The laws of Victoria, Australia govern these terms, and you submit to the jurisdiction of the courts there for the resolution of any dispute between us").

Because the likely witnesses in this action are Envato employees who are under Envato's control, and the evidence is likely to be exclusively electronic, the remaining private interest factors are neutral.

The result is similar under the public interest factors: (1) the local interest of the lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum. *Lueck*, 236 F.3d at 1147.

Because this case involves the responsibilities and obligations of an Australian company and the interpretation of a contract governed by Australian law, California has no interest in this lawsuit. Further, the Central District of California remains "one of the busiest districts in the country," *Gambra v. Int'l Lease Fin. Corp.*, 377 F. Supp. 2d 810, 824 (C.D. Cal. 2005); *Peter Marco, LLC v. Banc of Am. Merchant Servs., LLC*, No. 2:22-cv-01486-SVW (JEMx), 2022 WL

3098703, at *4 (C.D. Cal. May 19, 2022) (noting "the Central District of California's crowded docket" would weigh in favor of transfer). As such, the balance of the public interest factors also weigh in favor of Australia. Because the center of gravity for this matter is in Australia, which provides an adequate forum, the Court should dismiss this action.

**D. Leave To Amend Would Be Futile.**

The Court should dismiss the Amended Complaint with prejudice, as leave to amend would be futile. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034 (9th Cir. 2011). Plaintiffs cannot cure the defects in their Amended Complaint through amendment. Plaintiffs cannot plead around the inescapable fact that their circumstances in using the videos on Envato's site for commercial purposes such as professional editing, not personal or private viewing, are not covered by the interests the VPPA was meant to protect. Nor can they plead that Envato is a video tape service provider. Consequently, their allegations are outside the scope of the VPPA. In any event, Plaintiffs escape the fact that Envato disclosed its use of the Meta pixel to them when they subscribed to Envato's services and that they consented to its use by choosing not to disable cookies when using Envato's website.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Amended Complaint in its entirety, with prejudice.

Dated: August 9, 2024

Respectfully Submitted,

**GOODWIN PROCTER LLP**

By: */s/ Mark David McPherson*

MARK DAVID MCPHERSON (SBN 307951)
*mmcpherson@goodwinlaw.com*
620 Eighth Avenue
New York, NY 10018
Tel.: 212.813.8869
Fax.: 212.202.4582

W. KYLE TAYMAN (pro hac vice application pending)
*ktayman@goodwinlaw.com*
901 New York Avenue NW
Washington, DC 20001
Tel.: 202.346.4000
Fax.: 202.346.4444

LAURA G. BRYS (SBN 242100)
*lbrys@goodwinlaw.com*
601 S. Figueroa Street, 41st Floor
Los Angeles, CA 90017
Tel.: 213.426.2500
Fax.: 213.623.1673

Attorneys for Defendants

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Envato Pty Ltd and Envato Elements Pty Ltd, certifies that this memorandum of points and authorities contains 7,677 words and complies with the limit set by the Court's Standing Order dated June 6, 2024. (Dkt. 12, §VIII.C.)

August 9, 2024

*/s/ Mark David McPherson*
MARK DAVID MCPHERSON

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Central District of California by using the CM/ECF system on **August 9, 2024**. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on **August 9, 2024**.

*/s/ Mark David McPherson*
MARK DAVID MCPHERSON