JULIAN HAMMOND (SBN 268489)
jhammond@hammondlawpc.com
CHRISTINA TUSAN (SBN 192203)
ctusan@hammondlawpc.com
ADRIAN BARNES (SBN 253131)
abarnes@hammondlawpc.com
ARI CHERNIAK (SBN 290071)
acherniak@hammondlawpc.com
POLINA BRANDLER (SBN 269086)
pbrandler@hammondlawpc.com
HAMMONDLAW, P.C.
1201 Pacific Ave, 6th Floor
Tacoma, WA 98402
(310) 601-6766 (Office)
(310) 295-2385 (Fax)

*Attorneys for Plaintiffs and the Putative Class*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| **STEPHAN PLOTSKER** and **MICHAEL KLEEMAN,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**ENVATO PTY LTD.** and **ENVATO ELEMENTS PTY LTD.**,<br><br>Defendants. | Case No. 2:24-cv-4412-MEMF-RAO<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date: December 5, 2024<br>Time: 10:00 a.m.<br>Court: 8B<br>Judge: Hon. Maame Ewusi-Mensah Frimpong |

## TABLE OF CONTENTS


**I. INTRODUCTION....1**

**II. SUMMARY OF ALLEGATIONS FROM THE FIRST AMENDED COMPLAINT....1**

**III. ARGUMENT....2**

**A. Plaintiffs Have Standing to Pursue Their Claims....2**

**B. Plaintiffs Meet the 12(b)(6) Requirements for Alleging the VPPA Claim in their Amended Complaint....6**

1. Applicable Legal Standard....6

2. Envato is a Video Tape Service Provider Under the VPPA....7

3. Plaintiffs Adequately Allege Disclosure of Personally Identifiable Information....9

4. Plaintiffs Did Not Consent to Envato's Disclosure of Their Personally Identifiable Information....11

**C. Defendants Have Failed to Meet their Heavy Burden of Showing that Dismissal on the Ground of Forum Non Conveniens is Warranted....14**

1. Applicable Legal Standard....15

2. Defendants Have Failed to Show that Australia is an Adequate Forum....16

3. The Balance of Private and Public Interest Factors Does Not Favor Dismissal....17

**D. Leave to Amend....23**

**IV. CONCLUSION....24**

## TABLE OF AUTHORITIES

**CASES**

*Abundancia, LLC V. R.D.T. Bus. Enterprises, Inc.*, No. 2:15–CV–00755–CAS, 2015 WL 3533213 (C.D. Cal. June 3, 2015) ....18

*Ade v. VIki, Inc.*, No. 23-CV-02161-RFL, 2024 WL 1880153 (N.D. Cal. Mar. 28, 2024) ....10

*Austin-Spearman v. AMC Network Entm't LLC*, 98 F. Supp. 3d 662 (S.D.N.Y. 2015) ....3

*Barclift v. Keystone Credit Servs. LLC*, 585 F. Supp. 3d 748 (E.D. Pa. 2022) ....5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)) ....6

*Boston Telecomm. Group, Inc. v. Wood*, 588 F.3d 1201 ((9th Cir. 2009) ....7, 15, 18

*Budget Blinds, Inc. v. Mahmood*, No. CV10-0552 PSG (MLGx), 2010 WL 3001629 (C.D. Cal. July 29, 2010) ....20

*Cantu v. Sunrun Inc.*, No. 23-cv-974-JO-AHG, 2023 WL 11795670 ((S.D. Cal. Nov. 22, 2023). ....8

*Cantu v. Tapestry, Inc.*, 697 F. Supp. 3d 989 (S.D. Cal. 2023) ....7, 9

*Cantu v. Tapestry, Inc.*, No. 22-cv-1974-BAS-DDL, 2023 WL 4440662 (S.D. Cal. July 10, 2023)3, 6, 7, 8

*Cappello v. Walmart Inc.*, No. 18-CV-06678-RS, 2019 WL 11687705 (N.D. Cal. Apr. 5, 2019) ..7, 12

*Carijano v. Occidental Petroleum Corp.*, 643 F. 3d 1216 (9th Cir. 2011) ....18

*Carroll v. General Mills, Inc.*, No. 23-cv-1746 (DSF), 2023 WL 4361093 (C.D. Cal. June 26, 2023).9

*Carter v. Scripps Network, LLC*, 670 F. Supp. 3d 90 (S.D.N.Y. 2023) ....4

*Cheng v. Boeing Co.*, 708 F. 2d 1406 (9th Cir. 1983) ....16

*Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F. 2d 1446 (9th Cir. 1990) ....15

*DaVita, Inc. v. Amy's Kitchen, Inc.*, 379 F. Supp. 3d 960 (N.D. Cal. 2019), *aff'd*, 981 F.3d 664 (9th Cir. 2020) ....2

*Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023) ....6

*Eichenberger v. ESPN*, 876 F.3d 979 (9th Cir. 2017) ....3, 10

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) (per curiam) ....23

*Fan v. NBA Properties Inc.*, No. 23-cv-05069-SI, 2024 WL 1297643 (N.D. Cal. Mar. 26, 2024) ....11

*Foman v. Davis*, 371 U.S. 178 (1962) ....23

*Gambra v. Int'l Lease Fin. Corp.*, 377 F. Supp. 2d 810 (C.D. Cal. 2005) ....22

*Gates Learjet Corp. v. Jensen*, 743 F. 2d 1325 (9th Cir. 1984) ....22

*Glob. Med. Sols., Ltd v. Simon*, No. CV1204686 MMM (FMOx), 2013 WL 12371339 (C.D. Cal. Jan. 10, 2013) ....16

*Globatrac LLC v. JB Squared Ltd.*, No. CV-15-9278-MWF (SPx), 2016 WL 9045479 (C.D. Cal. Feb. 5, 2016) ....18

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ....20

*In re Facebook, Inc., Consumer User Profile Priv. Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019) ....8

*In re Google RTB Consumer Priv. Litig.*, 606 F.Supp.3d 935 (N.D. Cal. 2022)....................................6
*In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262 (3rd Cir. 2016)..........................................4, 10
*In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017) ..............................7, 8
*In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016 (N.D. Cal. 2014) ..............................................................5
*Ito v. Tokio Marine & Fire Ins. Co. Ltd.*, 166 Fed Appx. 932 (9th Cir. 2006)....................................19
*Jackson v. Fandom, Inc.*, No. 22-CV-04423-JST, 2023 WL 4670285 (N.D. Cal. July 20, 2023).......10
*Lavera Skin Care N. Am., Inc. v. Laverana GmbH & Co. KG*, No. 2:13–CV–02311–RSM, 2014 WL 7338739 (W.D. Wash. Dec. 19, 2014)...................................................................................18
*Limited v. OJSC Rusnano*, No. 5:15-cv-01612-RMW, 2016 WL 5724966 (N.D. Cal. Sept. 30, 2016) .....................................................................................................................................24
*Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764 (9th Cir. 1991) ......................................15
*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) .......................................................................................6
*Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F. 3d 656 (9th Cir. 2009) ..........................16
*Lueck v. Sundstrand Corp.*, 236 F. 3d 1137 (9th Cir. 2014)). ................................................... passim
*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ..............................................................................2
*Mizokami Bros. of Ariz., Inc. v. Baychem Corp.*, 556 F.2d 975 (9th Cir. 1977), *cert. denied*, 434 U.S. 1035 (1978)..........................................................................................................................16
*Osheke v. Silver Cinemas Acquisition Co.*, 700 F. Supp. 3d 921 (C.D. Cal. 2023)...............................4
*Perry v. Cable News Network*, 854 F.3d 1336 (11th Cir. 2017)...........................................................3
*Peter Marco, LLC v. Banc of Am. Merchant Services, LLC*, No. 2:22-CV-01486-SVW (JEMx), 2022 WL 3098703 (C.D. Cal. May 19, 2022) ..................................................................................22
*Pileggi v. Washington Newspaper Publ'g Co., LLC*, No. CV 23-345 (BAH), 2024 WL 324121 (D.D.C. Jan. 29, 2024)...............................................................................................................4
*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981)............................................................... passim
*Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015) ..............................................................................16
*Ravelo Monegro v. Rosa*, 211 F. 3d 509 (9th Cir. 2000).....................................................................15
*Ridgway v. Phillips*, 383 F. Supp. 3d 938 (N.D. Cal. 2019)................................................................16
*Salazar v. Nat'l Basketball Ass'n*, 685 F. Supp. 3d 232 (S.D.N.Y. 2023) .........................................3, 4
*Sellers v. Bleacher Rep., Inc.*, No. 23-CV-00368-SI, 2023 WL 4850180 (N.D. Cal. July 28, 2023) ..10
*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007) ................................15
*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ......................................................................................2, 3
*Tawam v. Feld Ent. Inc.*, 684 F.Supp.3d 1056 (S.D. Cal. 2023) ..........................................................7
*TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) ..................................................................3, 5
*Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F. 3d 1163 (9th Cir. 2006)..................................17, 21, 22
*Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017)............................................3

*Vivendi, S.A. v. T-Mobile USA, Inc.*, No. C06-1524JLR, 2007 WL 1168819 (W.D. Wash. Apr. 18, 2007) ....24

*Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean Geological Formation*, 524 F.3d 1090 (9th Cir. 2008) ....6

**STATUTES**

18 U.S.C. § 2710(a)(3) ....1, 9
18 U.S.C. § 2710(a)(4) ....1, 7
18 U.S.C. § 2710(b)(1) ....1, 3
18 U.S.C. § 2710(b)(2) ....11, 12
18 U.S.C. § 2710(b)(2)(B)(i)-(iii) ....11
18 U.S.C. § 2710(b)(2)(B)(ii) ....14
18 U.S.C. § 2710(b)(2)(B)(iii) ....14
18 U.S.C. §§ 2710 et seq. ....1
Fed. R. Civ. P. 12(b)(6) ....5, 6, 14, 23
Fed. R. Civ. P. 15(a)(2) ....23
Fed. R. Civ. P. 43 ....20
Fed. R. Civ. P. 45(b)(2) ....20

**OTHER AUTHORITY**

*Hearings on Nomination of Robert H. Bork to be Associate Justice of the Supreme Court of the United States Before the Senate Committee on the Judiciary*, 100th Cong., 1st Sess. 1374 (Sept. 28, 1987) ....21

## I. INTRODUCTION

Defendants Envato Pty Ltd. and Envato Elements Pty Ltd. (collectively "Envato" or "Defendants") operate a subscription service for their website through which subscribers, including Plaintiffs and putative class members in the instant case, can view and download more than six million prerecorded videos. Unbeknownst to Plaintiffs, their identities and a record of every video clip they viewed or downloaded, was disclosed by Defendants to a third party, Meta Platforms, Inc. ("Meta") (formerly known as Facebook). Plaintiffs' First Amended Complaint alleges in detail all facts necessary to establish that Defendants' conduct violated the Video Privacy Protection Act, 18 U.S.C. §§ 2710 et seq.

The motion before the Court concerns Defendants' effort to avoid a well-pled claim based on Defendants' unlawful disclosure of their subscribers' identities and video-viewing habits. Defendants seek dismissal on the ground that Plaintiffs purportedly lack standing, on the ground that Plaintiffs have failed to state a claim, and on the ground of forum non conveniens. Each of Defendants' arguments is without merit. The motion should be denied, and Plaintiffs should be permitted to attempt to vindicate their privacy rights and the privacy rights of the putative class of similarly-situated U.S. persons in this Court.

## II. SUMMARY OF ALLEGATIONS FROM THE FIRST AMENDED COMPLAINT

The Video Privacy Protection Act ("VPPA"), 18 U.S.C. §§ 2710 *et seq.*, prohibits "[a] video tape service provider [from] knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1). The VPPA defines personally identifiable information ("PII") as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). A video tape service provider is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). *See* First Amended Complaint ("FAC"), Dkt. 19, ¶¶ 15-17.

Defendant Envato Pty Ltd. develops, owns, and operates the subscription service, Envato Elements, which, Plaintiffs allege, features over one hundred thousand prerecorded videos on its

website. FAC, ¶ 2.[1] Envato makes money by offering paid subscriptions to its library of prerecorded videos. FAC, ¶ 3. Subscribers, such as Plaintiffs and putative class members, are able to view and download prerecorded videos. FAC, ¶¶ 18-20.

Unbeknownst to Plaintiffs, a record of each video they chose to view or download was released or disclosed by Envato to Meta along with each Plaintiffs' respective Facebook ID through Meta Pixels embedded by Defendants on Envato's website. FAC, ¶¶ 6, 23, 35-45. Plaintiffs allege that the Facebook ID can be used by an ordinary person, and is used by Meta, to link a computer user to a Facebook account or profile. FAC, ¶¶ 37, 45. Plaintiffs further allege that the personal information publicly listed on a Facebook account or profile includes a person's first and last name. FAC, ¶¶ 28, 44. Thus, the information disclosed by Envato to Meta – "[a] Facebook ID, along with the title of the prerecorded video watched and downloaded" – is PII within the meaning of the VPPA. *Id.* And, accordingly, Plaintiffs allege Defendants violated the VPPA by disclosing Plaintiffs' and putative class members' PII to Meta. FAC, ¶¶ 83-92.

## III. ARGUMENT

### A. <u>Plaintiffs Have Standing to Pursue Their Claims</u>

Article III standing is "a jurisdictional prerequisite to a federal court's consideration of any claim." *DaVita, Inc. v. Amy's Kitchen, Inc.*, 379 F. Supp. 3d 960, 967 (N.D. Cal. 2019), *aff'd*, 981 F.3d 664 (9th Cir. 2020). To demonstrate standing, a plaintiff must have suffered an injury in fact that is fairly traceable to the challenged conduct and likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). A plaintiff establishes injury in fact when he has suffered an invasion of a legally protected interest that is "concrete and particularized," meaning the injury must "actually exist" and "must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-40 (2016). "At the pleading stage, general factual allegations of injury resulting from defendant's conduct may suffice, for on a motion to dismiss [the court must] presume that general

[1] In fact, Defendants' website asserts that it offers **over 6 million** "stock video" assets and over 119,000 "video templates." *See* Declaration of Mark David McPherson ("McPherson Decl.") (Dkt. 23-1), Ex. A (Dkt. 23-4) (described by Mr. McPherson as a "true and correct copy of the About section on Defendants' website" downloaded on Aug. 6, 2024).

allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (citations omitted).

In *TransUnion LLC v. Ramirez*, the Supreme Court held that, "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." 594 U.S. 413, 427 (2021) (emphasis in original). Thus, "under Article III, an injury in law is not an injury in fact." *Id.* The Court further clarified, however, that, "[v]arious intangible harms" that "are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts"—such as "reputational harms, disclosure of private information, and intrusion upon seclusion"—can be considered concrete. *Id.* at 425.

"[P]rior to *TransUnion*, courts ... consistently found that plaintiffs satisfy the concreteness requirement of Article III standing where they allege a deprivation of their privacy rights under the VPPA." *Salazar v. Nat'l Basketball Ass'n*, 685 F. Supp. 3d 232, 240 (S.D.N.Y. 2023); *see also Austin-Spearman v. AMC Network Entm't LLC*, 98 F. Supp. 3d 662, 666–67 (S.D.N.Y. 2015) ("[E]very court to have addressed this question has reached the same conclusion, affirming that the VPPA establishes a privacy right sufficient to confer standing through its deprivation[.]") (collecting cases).

And, <u>since *TransUnion* courts have continued to reach that same conclusion</u>. As the District Court explained in *Cantu v. Tapestry, Inc.*, "[i]n the Ninth Circuit, the concreteness requirement for Article III standing is satisfied when a consumer alleges that his data has been impermissibly disclosed in violation of the Act." No. 22-cv-1974-BAS-DDL, 2023 WL 4440662, at *4 (S.D. Cal. July 10, 2023) (citing *Eichenberger v. ESPN*, 876 F.3d 979, 983 (9th Cir. 2017)). This is true because violations of the VPPA are not mere "procedural violations" as the Supreme Court described in *Spokeo*. *Spokeo*, 578 U.S. at 342; *Eichenberger*, 876 F.3d at 982. Rather, "every 18 U.S.C. § 2710(b)(1) violation 'present[s] the precise harm and infringe[s] the same privacy interests Congress sought to protect' by enacting the VPPA." *Eichenberger*, 876 F.3d at 984 (citing *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (alterations in original)). "Accordingly, it is sufficient for Plaintiff to plead facts that Defendant has disclosed his information in violation of the VPPA, and nothing more." *Cantu v. Tapestry*, 2023 WL 4440662, at *4 (citing *Eichenberger*, 876 F.3d at 982; *Perry v. Cable News Network*, 854 F.3d 1336, 1341 (11th Cir. 2017) ("Accordingly, we hold that a plaintiff . . . has satisfied the

concreteness requirement of Article III standing, where the plaintiff alleges a violation of the VPPA for a wrongful disclosure."); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3rd Cir. 2016) ("While perhaps 'intangible,' the harm is also concrete in the sense that it involves a clear *de facto* injury, *i.e.*, the unlawful disclosure of legally protected information." (citing *Spokeo*, 578 U.S. at 340)); *see also Carter v. Scripps Network, LLC*, 670 F. Supp. 3d 90, 95-96 (S.D.N.Y. 2023) (denying motion to dismiss on standing grounds on the basis that, "at the pleading stage, defendants' alleged disclosure of plaintiffs' personal information and viewing activities describes traditionally recognized harm."); *Pileggi v. Washington Newspaper Publ'g Co., LLC*, No. CV 23-345 (BAH), 2024 WL 324121, at * 5 (D.D.C. Jan. 29, 2024) ("the alleged unlawful 'disclosure of [a plaintiff's] information to a third party' ... bears 'a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts,' ... including the common-law tort of intrusion upon seclusion that the Supreme Court in *TransUnion* expressly identified as among the 'intangible harms' 'qualify[ing] as concrete injuries under Article III.'") (citations omitted); *Salazar*, 685 F. Supp. 3d at 240 (allegations that a website "shared private information about ... [a plaintiff's] video viewership to a third party without his consent or knowledge" were "sufficient to establish concrete injury (and standing) post-*TransUnion* because the 'disclosure of private information is a harm that courts have traditionally considered to be redressable.'" (citation omitted)).

Defendants assert that the instant case is different because Plaintiffs are, somehow, not "consumers" that the VPPA was intended to protect, or that, otherwise, their claim under the VPPA "does not bear 'a close relationship' to traditional privacy harms." Defendant's Motion to Dismiss (Dkt. 23) ("MTD") 7:26-8:11. Defendants cite no relevant authority for the proposition that only some violations of the VPPA are sufficient to meet the concreteness requirement of Article III. The cases cited by Defendants are entirely inapposite. In *Osheke v. Silver Cinemas Acquisition Co.*, for example, the court considered whether the VPPA covered the purchase of movie tickets on a movie theater website, holding that it does not because "[m]ovie theatres do not rent movies, sell movies or deliver movies; they 'show' movies," and noting that "[t]here is nothing in the legislative record to indicate or even suggest that the VPPA was intended to cover public acts [such as watching a movie in a movie theater]." 700 F. Supp. 3d 921, 925-26 (C.D. Cal. 2023). But, Plaintiffs do not allege that they watched Envato

videos solely in public or downloaded videos from Envato solely for public use. And Defendants cannot simply insert their unfounded and inaccurate allegations such as that Plaintiffs were "viewing stock videos and b-roll footage . . . for the express purpose of using and repurposing that content for public use," MTD 7:26-8:6, into Plaintiffs' First Amended Complaint. In fact, Plaintiffs open their FAC by alleging that Defendants unlawfully disclosed "**private information** about their **personal** video-viewing habits and activities." FAC, ¶ 1 (emphasis added). And echo that allegation later in their FAC. *Id.* at ¶ 90.

Defendants also cite two cases as support for the following statement: "[a]s courts since *TransUnion* have explained, in the context of informational privacy, only the 'dissemination or misuse of sensitive and confidential information' is protected." MTD, 8:14-18. The first case cited, however, *In re Yahoo Mail Litig.*, was decided in 2014, long before *TransUnion*, addressed the protections offered by the California Constitution, not the VPPA, and did not address any issues relating to standing because the motion before it was brought under Rule 12(b)(6). *See* 7 F. Supp. 3d 1016, 1024, 1041 (N.D. Cal. 2014). In brief, the court in *In re Yahoo Mail Litig.* addressed the issue of whether the plaintiffs, in that case, had successfully stated a claim for relief under the California Constitution based on their allegations that "Yahoo scans, analyzes, collects, and stores user information [from their emails] without their consent." *Id.* at 1021. It is patently irrelevant to the instant case.

The second case cited by Defendants for the same proposition, *Barclift v. Keystone Credit Servs. LLC*, is no more helpful to Defendants. In *Barclift*, the court considered whether an alleged violation of the Fair Debt Collection Practices Act ("FDCPA") was sufficient to establish Article III standing. 585 F. Supp. 3d 748 (E.D. Pa. 2022). The court analyzed whether the "mailing vendor theory" pursued by plaintiff "establishes a concrete harm." *Id.* at 757. Having reviewed the specific allegations in that case, the court agreed with the "majority of district courts" that had "determined that the mailing vendor theory does not establish a concrete injury." *Id.* (collecting cases). This is, again, completely irrelevant to the instant case. It concerns a different statute, the violation of which "does not bear a close enough relationship" to a "'harm 'traditionally' recognized as providing a basis for a lawsuit in American courts.'" *Id.* at 758 (quoting *TransUnion*, 594 U.S. at 424). But, as noted above, numerous courts directly

considering the VPPA have found, post *TransUnion*, that an alleged violation of the VPPA satisfies the Article III concreteness requirements.

Rather than an attack on Plaintiffs' standing to sue, Plaintiffs suggest that Defendants' argument is perhaps best understood as an attack on the merits of Plaintiffs' VPPA claim. In *Cantu v. Tapestry, Inc.*, the defendant argued, similarly, that the plaintiff lacked Article III standing because "the information disclosed [wa]s not PII within the meaning of the VPPA, and he ha[d] not adequately alleged that he was a consumer as defined by the Act." 2023 WL 4440662, at *7 (S.D. Cal. July 10, 2023). The court in *Cantu* held that it would not "consider these arguments as part of Defendant's Rule 12(b)(1) motion because they attack the merits of Plaintiff's VPPA claim, not his standing to sue." *Id.* at 7, n.5 (citing *Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean Geological Formation*, 524 F.3d 1090, 1094 (9th Cir. 2008) ("As a general rule, when '[t]he question of jurisdiction and the merits of [the] action are intertwined,' dismissal for lack of subject matter jurisdiction is improper." (citation omitted) (alterations in original))). Plaintiffs respectfully suggest that the Court should take the same approach here, where Defendants are effectively arguing, albeit erroneously, that Plaintiffs, Envato, and/or the specific conduct alleged by Plaintiffs do not fall within the scope of the VPPA.

**B. <u>Plaintiffs Meet the 12(b)(6) Requirements for Alleging the VPPA Claim in their Amended Complaint</u>**

*1. <u>Applicable Legal Standard</u>*

Under Fed. R. Civ. P. 12(b)(6), the claims asserted in a Complaint withstand dismissal for failure to state a claim where Plaintiffs plead "enough facts to state a claim [for] relief that is plausible on its face." *In re Google RTB Consumer Priv. Litig.*, 606 F.Supp.3d 935, 942 (N.D. Cal. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff." *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1075 (N.D. Cal. 2023). "If the court dismisses the complaint, it 'should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Id.* (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

//

2. *Envato is a Video Tape Service Provider Under the VPPA*

Under the VPPA, a "video tape service provider" is "any person, engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio-visual materials." 18 U.S.C. § 2710(a)(4). The Ninth Circuit has not interpreted this definition, but courts within the circuit have held that for a defendant "to be 'engaged in the business' of audio-visual services such that a defendant's activities rise to the level of video tape service provider requires the plaintiff sufficiently plead the defendant's involvement 'connotes a particular field of endeavor' or a 'focus of the defendant's work.'" *Cantu v. Tapestry, Inc.*, 697 F. Supp. 3d 989, 993 (S.D. Cal. 2023) (quoting *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017); *accord Tawam v. Feld Ent. Inc.*, 684 F.Supp.3d 1056, 1060-61 (S.D. Cal. 2023)).

Plaintiffs allege that Defendants' online subscription service, Envato Elements, "features over one hundred thousand prerecorded videos," that Envato "markets its library of prerecorded videos to content creators," and that Envato "makes money by offering paid subscriptions to [its] video library." FAC ¶¶ 2-3. Thus, Envato, which "operates a stock video subscription service by which its users can watch, license and download pre-recorded videos," FAC ¶ 18, falls squarely within the definition of a "video tape service provider." Indeed, as courts have recognized:

> [t]he requirement that a defendant be 'engaged in the business ... of rental, sale, or delivery' of video content is typically **straightforward to apply in cases in which the defendant directly rents or sells video content or access to such content over the internet**. *See, e.g., Cappello v. Walmart, Inc.*, No. 18-CV-06678-RS, 2019 WL 11687705, at *2 (N.D. Cal. Apr. 5, 2019) (permitting claim against Walmart, a business that sold video media products through its website); *Cantu v. Tapestry, Inc.*, No. 22-cv-1974-BAS-DDL, 2023 WL 4440662, at *8 (S.D. Cal. July 10, 2023) (explaining that the type of sale at issue in *Cappello* is directly analogous to the conduct motivating the passage of the VPPA); *Ambrose v. Bos. Globe Media Partners LLC*, No. 21-10810-RGS, 2022 WL 4329373, at *1-2 (D. Mass. Sept. 19, 2022) (permitting claim against the Boston Globe because it provided "hundreds, if not thousands, of videos" to users through its website in exchange for a paid digital subscription); *Czarnionka v. Epoch Times Ass'n, Inc.*, No. 22 Civ. 6348 (AKH), 2022 WL 17069810, at *4 (S.D.N.Y. Nov. 17, 2022) (same, for the Epoch Times).

*Tawam*, 684 F.Supp.3d at 1060 (emphasis added).

Defendants concede that Envato's website includes "stock videos and video templates," but assert that "Envato is only 'peripherally or passively involved in video content delivery,' which is not

sufficient to 'fall within the statutory definition of video tape service provider,'" because only "about a third of the individual assets available" on Defendants' website are videos, and a consumer could subscribe to Envato's service and never download a single video. MTD, 11:2-23 (citations omitted). Defendants' attempts to diminish the importance of pre-recorded video assets to its business are undercut by its own evidence. In terms of mere numbers, the webpage listing the various creative assets available on Envato's website indicates that there are 6,491,216 Stock Video assets and 119,112 Video Template assets out of 19,468,292 total assets. *See* Ex. C to McPherson Decl. (Dkt. 23-4) (Screenshot of 'All items' section on Defendants' website). This belies the notion that the delivery of video content is merely peripheral to Defendants' business. Moreover, while "[t]he number of videos on a website may help answer the ultimate question of whether a company is engaged in the business of providing video content," and "the fact that a company has thousands of videos on its website may indicate that its business model hinges on the monetization of audio-visual content," still, "[t]he central inquiry remains whether the company is 'engaged in the business' of providing video content." *Cantu v. Sunrun Inc.*, No. 23-cv-974-JO-AHG, 2023 WL 11795670, at *3 (S.D. Cal. Nov. 22, 2023). And, Plaintiffs have adequately alleged that the delivery and sale of pre-recorded video content is a "focus of defendant's work." *See Cantu v. Tapestry, Inc.*, 2023 WL 4440662, at *8 ("The Court finds the analysis undertaken by the Central District of California, and implicitly approved of in the Northern District of California, to be on point. *In re Vizio*, 238 F. Supp. 3d at 1204; *In re Facebook, Inc., Consumer User Profile Priv. Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019). The language 'engaged in the business' 'connotes 'a particular field of endeavor,' *i.e.* a focus of the defendant's work.' *In re Vizio*, 238 F. Supp. 3d at 1221."). On this point, Plaintiffs allege, "Envato operates a stock video subscription service by which its users can watch, license and download pre-recorded videos," "Plaintiffs and other Class Members must subscribe to Envato in order to license and download prerecorded videos on www.elements.envato.com," and "[o]nce subscribed to Envato, Plaintiffs and other Class Members may select from among hundreds of thousands of pre-recorded videos." FAC, ¶¶ 18-20. Moreover, the evidence introduced by Defendants confirms precisely what Defendants seek to deny. As an example, Envato advertises its assets to potential subscribers by stating "[w]ith unlimited downloads of **video**, audio, photos, graphics, fonts, and everything in between, we've got all the creative ammo you need to

create something epic." Ex. C to McPherson Decl. (Dkt. 23-4) (Screenshot of "All items' section on Defendants' website emphasis added)), p. 2. Having listed video first, among its various assets available for viewing and downloading, Envato offers users the chance to "Browse by category," with the first two categories shown being "Stock Video" and "Video Templates." *Id.* at pp. 2-3. Defendants also maintain a "Stock Video" section of their website which describes Envato's "extensive range of high-quality stock videos and b-roll footage," and encourages subscribers to "[a]ccess HD & 4K stock footage by seasoned videographers to add that professional touch to your edits." Ex. D to McPherson Decl. (Dkt. 23-5), p. 2. Defendants' claim, then, that Envato is only 'peripherally or passively involved in video content delivery' is entirely incredible.

Finally, Defendants offer no relevant authority for their implicit claims that in order for Envato to be a video tape service provider, the majority of assets available on its website would have to be videos, or that all users would have to necessarily view or download one of its many millions of pre-recorded videos. The two cases cited by Defendants in which a complaint was found not to have sufficiently alleged that a defendant was a video tape service provider involved defendants that hosted prerecorded videos for the purpose of marketing their products. *See Cantu v. Tapestry, Inc*, 697 F. Supp. 3d 989; *Carroll v. General Mills, Inc.*, No. 23-cv-1746 (DSF), 2023 WL 4361093 (C.D. Cal. June 26, 2023). To be clear, both Tapestry, Inc., "a holding company for several high fashion brands, including Coach," *Cantu v. Tapestry*, 697 F. Supp. 3d at 991, and General Mills, the owner of the General Mills and Betty Crocker brands, *Carroll v. General Mills*, 2023 WL 4361093 at *1, hosted videos on their respective websites "as part of 'brand awareness'" and the videos were used "for marketing purposes" and were "not [d]efendant's product." *Cantu v. Tapestry*, 697 F. Supp. 3d at 994. These cases are, then, patently distinguishable from the instant case where Envato prominently promotes, and a significant part of its business model relies upon, the sale and delivery of pre-recorded video content to its subscribers.

*3. <u>Plaintiffs Adequately Allege Disclosure of Personally Identifiable Information</u>*

The VPPA defines "personally identifiable information" to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). The Ninth Circuit has further held that "'personally identifiable information' means only that information that would 'readily permit an ordinary person to identify a

specific individual's video-watching behavior.'" *Eichenberger*, 876 F.3d at 985 (quoting *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 267).

Plaintiffs allege that "the Meta Pixels that [Envato] installed on its website conveyed Plaintiffs' . . . Facebook IDs (through the c_user cookie), which can be used by Facebook and any ordinary person to find the user's real name." FAC ¶ 37. Plaintiffs also explain that "[a]nyone can identify a Facebook profile – and all personal information publicly listed on that profile, including a person's first and last name – by appending the Facebook ID [FID] to the end of Facebook.com." FAC ¶ 44. And, Plaintiffs further explain that "Facebook describes itself as a 'real identity platform,' meaning users are allowed only one account and must share 'the name they go by in everyday life.' Therefore, when users create an account, they must provide their first and last name, along with their birthday and gender." FAC ¶ 28. Thus, as the court found in *Ade v. Viki, Inc.*, when considering a complaint containing substantively almost identical allegations, "[t]hese allegations plausibly plead that the plaintiffs' FIDs are PII under the Ninth Circuit's 'ordinary person' standard. No. 23-CV-02161-RFL, 2024 WL 1880153, at *2–3 (N.D. Cal. Mar. 28, 2024) (citing *Sellers v. Bleacher Rep., Inc.*, No. 23-CV-00368-SI, 2023 WL 4850180, at *4 (N.D. Cal. July 28, 2023) ("The FID is a unique identifier that is enough, on its own, to identify a person."); *Jackson v. Fandom, Inc.*, No. 22-CV-04423-JST, 2023 WL 4670285, at *4 (N.D. Cal. July 20, 2023) ("[T]he Court may reasonably infer that an ordinary person could readily identify a specific Facebook user on the basis of a Facebook Profile ID.")).

As an initial matter, Defendants are quite wrong to suggest that Plaintiffs have failed to allege that their Facebook pages contain any personal information, such that the disclosure of their FIDs constitutes the disclosure of PII. MTD, 13:28-14:9. To the contrary, as detailed above, Plaintiffs have alleged that, by using an FID, "[a]nyone can identify a Facebook profile – **and all personal information publicly listed on that profile, including a person's first and last name** . . . ." FAC ¶ 44 (emphasis added). Thus, Plaintiffs clearly allege that their Facebook pages, as do all Facebook profiles, include their respective first and last names. *See also* FAC ¶ 37 (alleging that Facebook ID "can be used by . . . any ordinary person to find the user's real name.").

Defendants also erroneously suggest that Plaintiffs have only alleged that their encrypted FIDs were shared with Meta. In fact, Plaintiffs explain in detail that when "[a] visitor who has not logged out

of Facebook while watching and/or downloading a video on Envato will transmit the c_user cookie to Facebook. The c_user cookie contains that visitor's unencrypted Facebook ID." FAC ¶ 43. Plaintiffs further allege that throughout the periods during which they were, respectively, subscribed to Envato's services, they owned and used their respective Facebook accounts. FAC ¶¶ 8-9. And, they specifically allege that "[t]he cookies that were transmitted as a result of the Meta Pixels that [Envato] installed on its website conveyed Plaintiffs' . . . Facebook IDs (through the c_user cookie) . . . . FAC ¶ 37.

#### 4. *Plaintiffs Did Not Consent to Envato's Disclosure of Their Personally Identifiable Information*

A video tape service provider, such as Envato, may disclose a consumer's PII "to any person with the informed, written consent . . . of the consumer." 18 U.S.C. § 2710(b)(2). For consent to be valid, however, it must satisfy a number of specific requirements: (1) the written consent must be "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer;" (2) "at the election of the consumer" the consent must be either "given at the time the disclosure is sought" or "given in advance for a set period of time, not to exceed 2 years or until consent is withdrawn by the consumer, whichever is sooner;" and (3) the video tape service provider must provide "an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." 18 U.S.C. § 2710(b)(2)(B)(i)-(iii).

Plaintiffs have adequately alleged that Envato did not receive valid written consent from Plaintiffs. *See* FAC ¶¶ 6, 35, 88. Defendants do not address Plaintiffs' allegations regarding consent, and the lack thereof, rather they seek to introduce their Terms of Use, Privacy Policy, and Cookie Policy, and to affirmatively establish that Plaintiffs gave valid consent to the disclosure of their PII.

As an initial matter, as the district court found in *Ade v. Viki, Inc.*, even assuming it could consider the "Terms of Use, Privacy Policy, and Cookie Policy," presented by defendant in that case, "[t]he VPPA's consent requirements present factual issues regarding how the alleged consent form was presented to the consumer. In view of the plaintiffs' denial that Viki satisfied those requirements, the Court cannot find based on the pleadings that the plaintiffs gave valid consent to the disclosure of their PII." *Ade v. Viki, Inc.*, 2024 WL 1880153, at *3–4; *see also Fan v. NBA Properties Inc.*, No. 23-cv-05069-SI, 2024 WL 1297643, at *3 (N.D. Cal. Mar. 26, 2024) (denying motion to dismiss VPPA claim,

and holding that it was "premature to decide the question of consent."). Plaintiffs respectfully suggest that the Court should reach a similar conclusion in the instant case.

Even were the Court to consider Defendants' "consent" arguments, Defendants have failed to establish that the so-called consent purportedly given by Plaintiffs meets any of the specific requirements set out by the VPPA. And, <u>failure to meet any of the requirements would mean there was no valid consent</u>. First, even assuming, *arguendo*, that Defendants are correct that "a user cannot create an account – a requirement to download Envato video content – without agreeing to the User Terms, which include both the Privacy Policy and Cookie Policy," MTD 15:8-10, and that, therefore, Plaintiffs agreed to the User Terms and the policies to which they refer, the User Terms are not, as required, "distinct and separate from any form setting forth other legal or financial obligations of the consumer." 18 U.S.C. § 2710(b)(2)(B)(i). Rather, they set out numerous other legal and financial obligations of Envato's subscribers. *E.g.*, McPherson Decl., Ex. I (User Terms), Dkt. 23-10, ¶ 15 ("By signing on as a Subscriber you must agree to the individual payment terms that relate to your chosen method of payment, as notified to you"), ¶ 17 ("You are responsible for all costs of currency conversion relating to your Envato Elements subscription"), ¶ 18 ("When you subscribe to Envato Elements . . . you promise to us that you understand what you can and can't do with your downloaded Items in accordance with the Envato Elements License"), ¶ 19(a) ("You are responsible for paying all other fees and taxes associated with your use of Envato Elements wherever levied."). Moreover, because Defendants assert that the User Terms "include both the Privacy Policy and Cookie Policy," and that, supposedly, a user agrees to the terms of the Privacy Policy and Cookie Policy by agreeing to the User Terms, Defendants cannot argue that either the Privacy Policy or Cookie Policy somehow independently satisfies the "distinct and separate" requirement. MTD, 15:4-10.

Defendants address this issue only to suggest that the court in *Cappello v. Walmart Inc.*, set too high a standard when it held that the "distinct and separate" requirement means that there must be a "separate stand-alone consent form" "dedicated *solely* to informing consumers of [the defendant's] intent to share their personally identifiable information with Facebook." *See Cappello v. Walmart Inc.*, No. 18-CV-06678-RS, 2019 WL 11687705, at *2 (N.D. Cal. Apr. 5, 2019) (emphasis in original). But, under any reasonable interpretation of the VPPA the "consent" claimed by Defendants fails to meet the

"distinct and separate" requirement; it is neither distinct nor separate from numerous legal and financial obligations of the consumer.

Second, not one of the User Terms, the Privacy Policy, or the Cookie Policy, provides notice to subscribers, including Plaintiffs, that their PII, within the meaning of the VPPA, will be disclosed to any third party. The Privacy Policy describes the types of personal information that Envato *collects*. *See, e.g.*, McPherson Decl., Ex. J (Dkt. 23-11), ¶¶ 4-5 (describing "the type of personal information we collect"), ¶¶ 6-7 ("How we collect personal information"). It lists several types of recipients to which it will "disclose personal information," and this list categorically does not include third party advertisers or a description of any type of entity that a user would reasonably understand to include a third party advertiser such as Meta. *See id.* ¶¶ 10 (When we disclose your personal information). And, nowhere in the Privacy Policy does it indicate that Envato will disclose users' personal information to third party advertisers such as Meta. Defendant notes that the Privacy Policy states: "Occasionally, we will use third party advertising companies to serve ads based on prior visits to our Sites." MTD 16:2-3. But, again, the Privacy Policy fails to give any indication that Envato's "use [of] third party advertising companies" entails the <u>disclosure of subscribers' PII</u>. And, most strikingly, far from offering any clear indication that any cookies on Envato's website will collect or disclose subscribers' PII to Meta or any other third party, Envato's cookie policy, which Defendants cite heavily, states:

> We might sometimes partner with third-party services who may use various tracking technologies to provide certain services or features on our sites, including targeted online marketing or relevant on-site messaging. These third-party services use cookies to anonymously collect data and allow them to recognize your computer or mobile device each time you visit any of our sites. **No personally identifiable information is collected by these cookies. The anonymous data they collect is kept separate from the personal information about you as a user that we collect**.

Ex. K, Dkt. 23-12, p. 3 (emphasis added). This is, frankly, categorical evidence that Defendants did not obtain valid consent from any subscriber: how can Defendants have obtained consent to a particular set of activities through a set of documents which explicitly deny those activities will occur.

Third, Defendants offer no evidence to suggest that "at the election of the consumer" the consent purportedly given by Plaintiffs was either "given at the time the disclosure is sought" or "given in advance for a set period of time, not to exceed 2 years or until consent is withdrawn by the consumer,

whichever is sooner." 18 U.S.C. § 2710(b)(2)(B)(ii). And, Fourth, Defendants offer no evidence to suggest that Envato provided Plaintiffs or other subscribers with "an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." 18 U.S.C. § 2710(b)(2)(B)(iii). Defendants may argue that subscribers had the option to "opt out of third party advertising cookies at any time." MTD 16:11-18. But the document describing this option was the Cookie Policy which, as noted above, explicitly stated that cookies would not collect PII, such that it cannot constitute clear and conspicuous notice that subscribers could withdraw from the same disclosures it stated would never happen. Of course, it is also fundamentally inadequate because it offers no option for a subscriber to withdraw on a case-by-case basis. 18 U.S.C. § 2710(b)(2)(B)(iii). All else aside, Defendants' failure to meet either of these third or fourth requirements means there cannot be consent under the VPPA.

In short, the Court should decline to consider the issue of consent as part of Defendants' 12(b)(6) motion. And, even were the Court to consider Defendants' arguments, Defendants completely fail to establish any of the several requirements for valid consent under the VPPA.

### C. <u>Defendants Have Failed to Meet their Heavy Burden of Showing that Dismissal on the Ground of Forum Non Conveniens is Warranted</u>

The conduct of which Plaintiffs complain occurred while Defendants represented that they maintained an office and hub in Los Angeles, California, at which they employed at least 8 employees, including high level officers, such as Envato's Vice President of Engineering and Envato's United States Sales and Account Management Professionals.[2] FAC ¶¶ 10, 12. The conduct itself also occurred in the United States. Plaintiffs downloaded and viewed prerecorded videos from Envato's website while in the United States. *Id.* at ¶¶ 8-9. These videos were maintained on servers located in California. *Id.* at ¶13(a). Plaintiffs' PII was shared with Meta Platforms, Inc., *id.* at ¶¶ 6, 23-45, 51-62, a company headquartered and with its principal place of business in California, Decl. of Julian Hammond ("Hammond Decl."), filed herewith, ¶¶ 3. Envato also uses other U.S.-based companies (based in California), to conduct its

[2] Defendants now dispute that they currently maintain a Los Angeles office, but they have introduced no evidence to suggest that they did not maintain it during most or all of the relevant period. They have also not disputed that numerous employees, including high level officers, work from California or did so during the relevant period.

business, including Twilio-SendGrid (which creates and hosts emails for Envato) and Recurly, Inc. (which manages Envato's subscription service the subscription payment process). FAC ¶¶ 13(c), 13(d).

Defendants do not contest the Court's jurisdiction over them or over the subject matter of Plaintiffs' First Amended Complaint. Rather, despite the numerous strong connections of the instant action to California, Defendants seek dismissal of Plaintiffs' FAC on the ground of forum non conveniens. Yet, Defendants have failed to meet their *heavy burden* of proving that Plaintiffs and the putative class of U.S. persons should be required to litigate their case in Australia: Defendants have failed both to establish that Australia is an adequate alternative forum and that the balance of relevant private and public factors weighs strongly in favor of dismissal.

*1.* *<u>Applicable Legal Standard</u>*

"The doctrine of forum non conveniens is 'an exceptional tool to be employed sparingly.'" *Boston Telecomm. Group, Inc. v. Wood*, 588 F.3d 1201, 1212 (9th Cir. 2009) (quoting *Ravelo Monegro v. Rosa*, 211 F. 3d 509, 514 (9th Cir. 2000)). A party moving to dismiss based on the ground of forum non conveniens bears the burden of showing that there is an alternative forum that is available, adequate, and more convenient considering the public and private interests involved. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 254-55 (1981); *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007). To prevail on a motion to dismiss on the ground of forum non conveniens a defendant must make "a clear showing of facts which . . . establish such *oppression and vexation* of a defendant as to be *out of proportion* to plaintiff's convenience, which may be shown to be slight or nonexistent." *Ravelo Monegro*, 211 F. 3d at 514 (emphasis added; internal quotes omitted); *see also Boston Telecomm. Group, Inc.*, 588 F. 3d at 1212 (applying same standard). Put another way, a defendant's showing "must overcome the 'great deference ... due plaintiffs because a showing of convenience by a party who has sued in his home forum will usually outweigh the inconvenience the defendant may have shown.'" *Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 767 (9th Cir. 1991) (quoting *Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F. 2d 1446, 1448-49 (9th Cir. 1990)). Moreover, as in the instant case, "where the plaintiff is a United States citizen, the defendant must satisfy a heavy burden of proof." *Boston Telecomm. Group, Inc.*, 588 F.3d at 1207 (quoting *Lueck v. Sundstrand Corp.*, 236 F. 3d 1137, 1143 (9th Cir. 2014)). Indeed, the Ninth Circuit has held, "a

defendant must meet an almost impossible burden in order to deny a citizen access to the courts of this country," *Mizokami Bros. of Ariz., Inc. v. Baychem Corp.*, 556 F.2d 975, 977 (9th Cir. 1977), *cert. denied*, 434 U.S. 1035 (1978).

2. *Defendants Have Failed to Show that Australia is an Adequate Forum*

When determining whether a proposed alternative forum is adequate, one of the issues for a court to consider is whether the proposed foreign forum offers a remedy for the wrong of which the plaintiff complains. *See Lueck*, 236 F.3d at 1143 ("The foreign forum must provide the plaintiff with some remedy for his wrong in order for the alternative forum to be adequate."). "As with the other requirements of a forum non conveniens dismissal, the burden of showing the existence of an adequate alternative forum is the defendant's." *Id.* (citing *Cheng v. Boeing Co.*, 708 F. 2d 1406, 1411 (9th Cir. 1983)).

In the instant case, Defendants suggest that "Plaintiffs could assert their purported privacy interests by invoking Australia's privacy laws, such as the Privacy Act of 1988 . . ." MTD, 17:23-18:2. But, Defendants completely fail to address any remedies that might be available to Plaintiffs should they be forced to pursue litigation in Australia. *See, e.g., Lueck*, 236 F. 3d at 1144-45 (considering in detail the administrative remedies available in New Zealand before finding them to be adequate); *Glob. Med. Sols., Ltd v. Simon*, No. CV1204686 MMM (FMOx), 2013 WL 12371339, at *5–6 (C.D. Cal. Jan. 10, 2013) (considering in detail remedies available in Australia for plaintiffs' claims when ruling on motion to dismiss). Of course, for a foreign forum to be adequate it is not necessary that the available remedy be equal to that available in this Court. *See Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F. 3d 656, 666 (9th Cir. 2009) (citing *Piper Aircraft Co.*, 454 U.S. at 247). But, the burden is on Defendants to show that there was at least "'some' remedy," and they have failed to meet that burden. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1077–78 (9th Cir. 2015) (considering, in detail, the specific remedies available to plaintiff in foreign forum before determining it was adequate). On that basis alone, this Court should decline to dismiss Plaintiffs' Complaint on the ground of forum non conveniens. *See Ridgway v. Phillips*, 383 F. Supp. 3d 938, 946 (N.D. Cal. 2019) (holding that "cursory conclusion without reference to any legal authority in the United Kingdom" was "insufficient to warrant dismissal" because "Defendant . . .

failed to provide any evidence that Plaintiffs would have access to even 'some remedy' in the United Kingdom.").

*3. <u>The Balance of Private and Public Interest Factors Does Not Favor Dismissal</u>*

Even had Defendants met their burden of showing the existence of an adequate alternative forum, they categorically do not meet their burden of showing that the private and public interest factors *strongly favor* dismissal. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F. 3d 1163, 1180 (9th Cir. 2006) ("Even when an adequate alternative forum exists, we will not disturb the plaintiff's original choice of forum 'unless the "private interest" and the "public interest" factors strongly favor' dismissal.") (quoting *Lueck*, 236 F.3d at 1146).

***a. Private Interest Factors***

The private interest factors that courts will consider include: (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Lueck*, 236 F.3d at 1145 (internal citations and quotations omitted).

*<u>The Residence of the Parties and the Forum's Convenience to Litigants Favor Plaintiffs' Choice of Forum</u>*

With respect to the first factor, and the residence of the parties, in particular, Defendants note only that "Envato is located in Australia, where many of their employees—likely witnesses in this case—also reside." MTD. 18:24-25. The residence of Envato in Australia is more than countered by the fact that Plaintiff Kleeman is resident in California, Plaintiff Plotsker is resident in Florida, and they seek to represent a putative class of "persons in the United States." FAC, ¶¶ 8-9, 73. Moreover, while Defendants assert that they do not currently have an office in Los Angeles, they have introduced no evidence to suggest that they did not maintain a California office during some or all of the relevant period or that numerous employees, including high level officers, do not work from California or did not do so during the relevant period. *See* FAC ¶¶ 10, 12 (citing Envato's website and its LinkedIn profile for allegations regarding Envato's Los Angeles office and employees of that office).

With respect to the second factor – convenience to litigants, Plaintiffs' choice of forum is entitled to deference. *Carijano v. Occidental Petroleum Corp.*, 643 F. 3d 1216, 1227 (9th Cir. 2011) ("When a domestic plaintiff initiates litigation in its home forum, it is presumptively convenient." (citing *Piper Aircraft Co.*, 454 U.S. at 255-56)). In this regard, the fact that Plaintiff Plotsker and some of the putative class members are resident in states other than California does not somehow negate the fact that Plaintiff Kleeman and many putative class members are resident in California. Indeed, even if both Plaintiffs and all class members lived in the United States but outside California, their choice of forum would still be entitled to deference, albeit somewhat reduced. *See Boston Telecomm. Group, Inc.*, 588 F.3d at 1207 (rejecting proposition "that an American citizen suing in a state other than his state of residence deserves no more deference than a truly "foreign" plaintiff (*i.e.,* someone who is not a United States citizen or resident).").

Defendants are quite wrong to suggest that the existence of a permissive forum section clause in Defendants' Terms of Use somehow "lessens the weight of any inconvenience to [Plaintiffs]." Indeed, in the district court case cited by Defendants for this proposition, *Globatrac LLC v. JB Squared Ltd.*, the court noted that because the choice of forum provision in the agreement before it was "permissive rather than mandatory," it would simply apply "the traditional forum non conveniens test." No. CV-15-9278-MWF (SPx), 2016 WL 9045479, at *3 (C.D. Cal. Feb. 5, 2016) (citing *Lavera Skin Care N. Am., Inc. v. Laverana GmbH & Co. KG*, No. 2:13–CV–02311–RSM, 2014 WL 7338739, at *5 (W.D. Wash. Dec. 19, 2014) ("Where a forum-selection clause is instead permissive, the vast majority of courts that have addressed the issue have rejected *Atlantic Marine's* application and applied the traditional *forum non conveniens* test." (emphasis in original)); *Abundancia, LLC V. R.D.T. Bus. Enterprises, Inc.*, No. 2:15–CV–00755–CAS, 2015 WL 3533213, at *3 (C.D. Cal. June 3, 2015) ("Because the instant forum selection clause likewise omits such exclusive language, the clause is permissive and does not alter or otherwise inform the traditional transfer analysis.")).

*Factors Regarding Potential Witnesses Weigh Against Defendants' Proposed Foreign Forum*

Considering together the remainder of the first factor (the residence of witnesses), and the fourth and fifth factors (whether unwilling witnesses can be compelled to testify and the cost of bringing witnesses to trial, respectively), as the Ninth Circuit did in *Boston Telecomm. Group, Inc. v. Wood*, it is

clear that Defendants have failed to provide the Court with detail sufficient for the Court to assess these factors. *See Boston Telecomm. Group, Inc.*, 588 F.3d at 1208. With respect to these factors, Defendants, "in asking for the extraordinary measure of dismissal on forum non conveniens grounds, needed to provide not simply the numbers of witnesses in each locale, but information sufficient to assist the court in assessing the 'materiality and importance' of each witness." *Id.* at 1210 (quoting *Lueck*, 236 F.3d at 1146). But Defendants did not describe the witnesses they may call, their positions, the nature of the testimony they might be able to give, or any other detail of their potential witnesses. Indeed, Defendants did not even provide the number of witnesses purportedly resident in Australia. They certainly did not "provide enough information to enable the District Court to balance the parties' interests." *Piper Aircraft*, 454 U.S. at 258; *see also Ito v. Tokio Marine & Fire Ins. Co. Ltd.*, 166 Fed Appx. 932, 935 (9th Cir. 2006) ("[defendant] did not meet its burden because it failed to provide information about its proposed witnesses that would be sufficient to support a determination that the location of witnesses in Japan favors dismissal. The district court improperly assumed that [defendant's] witnesses are material to the litigation."). Furthermore, despite Defendants' assertion that they no longer have an office in Los Angeles, California, the Court should consider the fact that Defendants represented that they had such an office, at the time Plaintiffs filed their FAC, which employed at least 8 Envato employees, including high-level officers such as Envato's Vice President of Engineering and Envato's United States Sales and Account Management professionals. FAC ¶ 12 & fns. 8-10. Thus, there are likely Envato witnesses, material to the litigation, who are resident in California rather than Australia.

With respect to the fourth factor (whether unwilling witnesses can be compelled to testify), Defendants have not identified any witnesses that they would need to compel to testify or described whether that would be possible were the parties to litigate Australia. The only witnesses addressed by Defendants are "under the control of" the parties and "can be brought to court, no matter the forum." *Lueck*, 236 F. 3d at 1146; *see* MTD 19:17-18 ("the likely witnesses in this action are Envato employees who are under Envato's control . . . ."). In contrast, Plaintiffs would seek to compel testimony from Meta, a United States corporation headquartered in Menlo Park, California, regarding the Meta Pixel, the information disclosed by Envato to Meta regarding Plaintiffs and putative class members, the c_user cookie, the Facebook ID, and other topics critical to the instant case. Hammond Decl. ¶¶ 3-4. Plaintiffs

strongly believe that Meta would not voluntarily testify in this litigation. *Id.* ¶ 5. And, Plaintiffs would be able to compel Meta to testify if the case remains in this Court because this Court has absolute subpoena power to compel testimony of third party witnesses, like Meta, who refuse to testify voluntarily. *See Budget Blinds, Inc. v. Mahmood*, No. CV10-0552 PSG (MLGx), 2010 WL 3001629, at 8 (C.D. Cal. July 29, 2010); *see also* Fed. R. Civ. P. 45(b)(2) (the court's subpoena power to compel testimony of non-party witnesses extends to anywhere within the district and/or one hundred miles of where the person resides or transacts business). To reiterate, Defendants have simply not addressed whether unwilling witnesses based in the United States could be compelled to testify in Australia.

With respect to the fifth factor (the cost of bringing witnesses to trial), the Court cannot find that it weighs in favor of Defendants because Defendants have offered no information as to the number of witnesses they intend to call, the location of those witnesses, or the potential for those witnesses to testify remotely. Plaintiffs note that, pursuant to Fed. R. Civ. P. 43, this Court "may permit testimony [at trial] in open court by contemporaneous transmission from a different location." Defendants do not address whether any similar accommodation permitting remote testimony is available in Australia. Thus, Plaintiffs respectfully suggest that the Court should find that this factor weighs in favor of Plaintiffs.

*Other Private Factors*

With respect to all other private factors, Defendants note only that "the evidence is likely to be exclusively electronic [and, thus] the remaining private interest factors are neutral." MTD 19:17-18. Plaintiffs agree.

***b. Public Interest Factors***

The public interest factors that the Court must consider are: "(1) local interest of lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum." *Lueck*, 236 F. 3d, at 1147 (citing *Piper Aircraft*, 454 U.S., at 259-61; *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)).

Defendants suggest that these factors "weigh in favor of Australia" because "this case involves the responsibilities and obligations of an Australian company and the interpretation of a contract governed by Australian law, California has no interest in this lawsuit [and] the Central District of

California remains one of the busiest districts in the country." MTD 19:24-20:2 (internal quotations, citations omitted). Not so.

There is considerable local interest in the instant case. Plaintiff Kleeman is a resident of California, and Plaintiffs have alleged that 12.5% of the traffic to the Envato website comes from California. *See* FAC ¶¶ 9, 13(b). Plaintiffs believe that a considerable proportion of putative class members are residents of California. And, as discussed above, much of the conduct complained of occurred in California: Plaintiffs downloaded and viewed prerecorded videos while in the United States (one Plaintiff being in California); these prerecorded videos were maintained on servers located in California; and Plaintiffs' PII was shared with Meta – a company headquartered and with its principal place of business in California. FAC ¶¶ 6, 8-9, 13(a), 23-45, 51-62; Hammond Decl. ¶ 3. Moreover, California unquestionably has "a strong interest in ensuring the welfare of its residents." *Tuazon*, 433 F. 3d at 1182. Indeed, California's strong interest in protecting the privacy of its residents is reflected in the fact that the right to privacy is enshrined in the California Constitution.[3] The United States has also expressed a specific interest in protecting the privacy of personal video-viewing habits by enacting the VPPA.[4]

---

[3] Article 1, Section 1, provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

[4] As Senator Leahy stated in denouncing the disclosure of the titles of 146 films that Judge Robert H. Bork and his family had rented from a video store by a weekly newspaper in Washington – which was the impetus for the legislation which created the VPPA:

> It is nobody's business what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television or read or think about when they are home. . . . [I]n an era of interactive television cables, the growth of computer checking and check-out counters, of security systems and telephones, all lodged together in computers, it would be relatively easy at some point to give a profile of a person and tell what they buy in a store, what kind of food they like, what sort of television programs they watch, who are some of the people they telephone. . . . I think that is wrong. I think that is really Big Brother, and I think it is something that we have to guard against.
>
> . . .
>
> [Privacy] is not a conservative or a liberal or moderate issue. It is an issue that goes to the deepest yearnings of all Americans that we are free and we cherish our freedom and we want our freedom. We want to be left alone.

*Hearings on Nomination of Robert H. Bork to be Associate Justice of the Supreme Court of the United States Before the Senate Committee on the Judiciary*, 100th Cong., 1st Sess. 1374 (Sept. 28, 1987).

And, even if Australia had a similar interest in this case involving United States consumers and the disclosure of their private information to Meta, a California corporation – which it does not – the Ninth Circuit has clarified: "with this interest factor, we ask only if there is an identifiable local interest in the controversy, not whether another forum also has an interest." *Tuazon*, 433 F.3d at 1182. Thus, this public interest factor weighs against dismissal.

The other factors addressed by Defendants are of less significance. Defendants cite two cases for the proposition that the crowded docket of the Central District of California should weigh in favor of dismissal. *See* MTD 19:26-20:2 (citing *Gambra v. Int'l Lease Fin. Corp.*, 377 F. Supp. 2d 810, 824 (C.D. Cal. 2005); *Peter Marco, LLC v. Banc of Am. Merchant Services, LLC*, No. 2:22-CV-01486-SVW (JEMx), 2022 WL 3098703, at *4 (C.D. Cal. May 19, 2022). This argument betrays a misunderstanding of the congestion factor. In each of the cases cited by Defendants, the respective court recognized that "'[t]he real issue is not whether a dismissal will reduce a court's congestion but whether a trial may well be speedier in another court because of its less crowded docket.'" *Gambra*, 377 F. Supp. 2d at 824 (quoting *Gates Learjet Corp. v. Jensen*, 743 F. 2d 1325, 1337 (9th Cir. 1984); *Peter Marco, LLC*, 2022 WL 3098703, at *4 ("neither party has provided information about the relative congestion in this district and the [proposed alternative forum], so the Court cannot conclude that this concern weighs in either direction."). As the Ninth Circuit has explained, "[t]he *forum non conveniens* doctrine should not be used as a solution to court congestion; other remedies, such as placing reasonable limitations on the amount of time each side may have to present evidence, are more appropriate." *Gates Learjet Corp.*, 743 F.2d at 1337. Here, where Defendants have offered no evidence or even assertions regarding the relative congestion in Australia or the likely time to reach trial in that forum, there is no basis for this Court to find that the congestion factor weighs in favor of dismissal.

Defendants also state that the case involves "the interpretation of a contract governed by Australian law," but Plaintiffs do not understand this to be a claim that the second public factor – "the court's familiarity with governing law" – weighs in favor of Australia. After all, Plaintiffs' single cause of action is not a contract cause of action and there is no reason that it would be governed by Australian law if pursued in this Court. The relevant provision in the User Terms states only that "[t]he laws of Victoria, Australia govern **these terms** . . . ." McPherson Decl., Ex. I (Dkt. 23-10), ¶ 48 (emphasis

added). There is, then, no reason, even assuming that provision of the User Terms is enforceable, that Australian law would apply to the instant case which concerns a U.S. federal statute and non-contractual data privacy protections afforded by the United States.

**D. <u>Leave to Amend</u>**

Should this Court be inclined to grant Defendants' motion to dismiss pursuant to 12(b)(1) or 12(b)(6), Plaintiffs respectfully request that the Court permits them to amend their Complaint to address any shortcomings identified by the Court. Under Federal Rule of Civil Procedure 15(a)(2), district courts "should freely give leave [to amend] when justice so requires." A district court may deny leave to amend in the presence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam). In the instant case, Defendants do not allege that they will suffer any prejudice should Plaintiffs be permitted to amend, nor do they allege undue delay, bad faith, a dilatory motive, or any repeated failure to cure deficiencies. Instead, they allege only that leave to amend would necessarily be futile for the same reasons that they believe their 12(b)(6) motion should be granted. Respectfully, this is incorrect. Plaintiffs would be able to adequately address any shortcomings identified by the Court, and it would be inconsistent with Rule 15(a)(2) for this Court to deny leave to amend when Plaintiffs have, at this juncture, filed only one amended pleading.

Should the Court be inclined to grant Defendants' motion on the ground of forum non conveniens, Plaintiffs respectfully request that they be granted an opportunity to conduct discovery limited to matters relevant to the forum non conveniens analysis. Discovery regarding, for example, the identities and locations of potential witnesses currently or formerly employed by Envato, and the topics upon which they would and could testify, and regarding Envato's Los Angeles office and the individuals employed there would surely aid the Court in its task of balancing the parties' interests. *Piper Aircraft Co.*, 454 U.S. at 258 (holding that "defendants must provide enough information to enable the District Court to balance the parties' interest."); *Limited v. OJSC Rusnano*, No. 5:15-cv-01612-RMW, 2016 WL

5724966, at * 6 (N.D. Cal. Sept. 30, 2016) (allowing discovery relevant to forum non conveniens issue); *Vivendi, S.A. v. T-Mobile USA, Inc.*, No. C06-1524JLR, 2007 WL 1168819, at 2 (W.D. Wash. Apr. 18, 2007) (same).

**IV. CONCLUSION**

For the foregoing reasons, Defendants' motion should be denied in its entirety.

Respectfully submitted,

Dated: September 20, 2024

*/s/ Julian Hammond*
JULIAN HAMMOND (SBN 268489)
jhammond@hammondlawpc.com

*Attorneys for Plaintiffs and the Putative Class*