**GOODWIN PROCTER LLP**

MARK DAVID MCPHERSON (SBN 307951)
*mmcpherson@goodwinlaw.com*
620 Eighth Avenue
New York, NY 10018
Tel.: 212.813.8869
Fax.: 212.202.4582

W. KYLE TAYMAN (admitted *pro hac vice*)
*ktayman@goodwinlaw.com*
901 New York Avenue NW
Washington, DC 20001
Tel.: 202.346.4000
Fax.: 202.346.4444

LAURA BRYS (SBN 242100)
*lbrys@goodwinlaw.com*
601 S. Figueroa Street, 41st Floor
Los Angeles, CA
Tel.: 213.426.2500
Fax.: 213.623.1673

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

STEPHEN PLOTSKER and MICHAEL KLEEMANN, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

ENVATO PTY LTD and ENVATO ELEMENTS PTY LTD,

Defendants.

Case No. 2:24-cv-4412-MEMF-RAO

**REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6) AND DOCTRINE OF FORUM NON CONVENIENS**

Date: December 5, 2024
Time: 10:00 a.m.
Courtroom: 8B
Judge: Hon. Maame Ewusi- Mensah Frimpong

Am. Complaint filed: June 17, 2024

# TABLE OF CONTENTS

**Page**

A. Because They Cannot Allege Any Invasion Of A Privacy Interest, Plaintiffs Lack Standing ..... 1

B. The Amended Complaint Should Be Dismissed Under Fed. R. Civ. P. 12(b)(6) For Failure To State A Claim. ..... 3

1. Plaintiffs Do Not Allege Disclosure Of PII. ..... 3

2. Envato Is Not A Video Tape Service Provider Under The VPPA ..... 4

3. Plaintiffs Consented To Envato's Recording And Use Of Information ..... 5

C. Australia Is A More Convenient Forum. ..... 8

D. Leave To Amend Would Be Futile. ..... 10

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ade v. Viki, Inc.*,
No. 23-cv-02161-RFL, 2024 WL 1880153 (N.D. Cal. Mar. 28, 2024) .................................. 4

*Cantu v. Tapestry, Inc.*,
697 F. Supp. 3d 989 (S.D. Cal. 2023) ....................................................................................... 5

*Cantu v. Tapestry, Inc.*,
No. 22-cv-1974-BAS-DDL, 2023 WL 4440662 (S.D. Cal July 10, 2023)............................. 2

*Cervantes v. Cntrywide Home Loans, Inc.*,
656 F.3d 1034 (9th Cir. 2011)................................................................................................ 10

*Eichenberger v. ESPN*,
876 F.3d 979 (9th Cir. 2017)...................................................................................................... 2

*Ghanaat v. Numerade Labs, Inc.*,
689 F. Supp. 3d 714 (N.D. Cal. 2023) ....................................................................................... 4

*Glob. Med. Sol., Ltd. v. Simon*,
No. 12-cv-04686-MMM-FMOx, 2013 WL 12371339 (C.D. Cal. Jan. 10, 2013) .................... 9

*Heerde v. Learfield Commc'ns, LLC*,
No. 2:23-cv-04493-FLA-MAAx, 2024 WL 3573874 (C.D. Cal. July 19, 2024) ..................... 4

*McGechie v. Atomos Ltd.*,
No. 2:22-cv-01812-DJC-DB, 2024 WL 1054924 (E.D. Cal. Mar. 11, 2024)........................... 9

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009)...................................................................................................... 6

*Silvertip Partners, LLC v. Proactive Preparedness, Inc.*,
No. LACV 16-5826-VAP, 2018 WL 5099747 (C.D. Cal., 2018) ............................................ 9

*Solomon v. Flipps Media, Inc.*,
No. 22-cv-5508-JMA-JMW, 2023 WL 6390055 (E.D.N.Y. Sept. 30, 2023)........................... 4

*Summa Resource Holdings LLC v. Carbon Energy Limited*,
No. 15-cv-05334-TEH, 2016 WL 2593868 (N.D. Cal, May 5, 2016) ...................................... 9

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ............................................................................................................. 1, 2

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017)...................................................................................... 5

**Statutes**

18 U.S.C. § 2710 ......................................................................................................................... 5

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) .......... 3, 4
Local Rule 7-3 .......... 10
Local Rule 15-1 .......... 10

In opposing Envato's motion to dismiss, Plaintiffs cite decisions permitting VPPA claims to proceed to discovery without meaningfully engaging on the key differences between those cases and this one. Unlike others, Plaintiffs here complain about disclosure of video clips for which they obtain a commercial license to display to audiences for professional projects, not videos to watch in their own homes. And unlike others, Plaintiffs here only allege that Envato discloses their encrypted Facebook IDs, which is insufficient to constitute an unauthorized disclosure of personal information for purposes of the VPPA. Though there are also many other differences, each of these two differences is sufficient to compel dismissal of the Complaint.

### A. Because They Cannot Allege Any Invasion Of A Privacy Interest, Plaintiffs Lack Standing.

Plaintiffs' case for standing rests on the Supreme Court's holding that standing can exist where a plaintiff suffers harm grounded in "disclosure of private information" or "intrusion upon seclusion," the kinds of "historical or common-law analogue[s]" to traditional privacy harms. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424-25 (2021). Yet Plaintiffs do not allege anything near a privacy harm in any purported disclosure of their viewing information from a website for professional content creators who purchase commercial licenses to re-display media assets to other audiences. (Dkt. 19 ¶ 2.) Indeed, Plaintiffs do not cite a case showing that traditional common-law privacy protections extend to publicly displayed information for commercial use.

Plaintiffs do not—and cannot—deny this fundamental factual difference between this case and the other cases in which plaintiffs were held to have standing to pursue a VPPA claim. Plaintiffs do not deny that Envato's website offers commercial licenses to use stock videos and video templates to re-display media assets to the public. (*See* Dkt. 23 at 7:28-8:6; Dkt. 23-2 at 2.) And Plaintiffs themselves acknowledge that Envato markets to "content creators" (Dkt. 19 ¶ 2), admitting (implicitly if not explicitly) that they are using Envato's assets to republish videos for an audience, not just watching videos for their own private consumption. By citing to its website content, therefore, Envato is not "insert[ing] . . . allegations" into the Amended Complaint, as Plaintiffs charge. (Dkt. 28 at 5:1-4.) The website provides critical context that Plaintiffs attempt to bury. In any event, Plaintiffs do not object to the Court's ability to consider any portion of

Envato's website. Quite the opposite: Plaintiffs cite Envato's exhibits, including excerpted portions of Envato's website and the publicly available information contained therein. (Dkt. 28 at 2:27-28, 8:5-8, 8:25-9:9; 12:11-18, 13:5-23, 22:27-23:1.)

Plaintiffs challenge Envato to cite a case denying standing based on allegations such as those here (Dkt. 28 at 4:21-23), ignoring that the allegations here differ from those in any other VPPA decisions. (*See* Dkt. 23 at 7:19-25.) And Plaintiffs themselves cannot cite a single case that confers Article III standing based on allegations related to viewing commercial stock video and similar media assets republished in public content. To the extent some courts' decisions include sweeping statements that Article III standing is satisfied by an allegation that information was disclosed in violation of the VPPA (Dkt. 28 at 3:16-4:17), those statements are necessarily dicta because they did not consider the facts alleged here. *See, e.g.*, *Cantu v. Tapestry, Inc.*, No. 22-cv-1974-BAS-DDL, 2023 WL 4440662, at *1, 4 (S.D. Cal. July 10, 2023) (viewing videos on the retail website Coach.com); *Eichenberger v. ESPN*, 876 F.3d 979, 981, 983 (9th Cir. 2017) (viewing sports-related news and events on television).

Indeed, the Supreme Court has already rejected Plaintiffs' suggestion that standing can be determined based on alleged violations of a statute writ large. (Dkt. 28 at 3:3-4:17.) As *TransUnion* held, standing must be determined based on each plaintiff's unique claims—even as to plaintiffs suing under the same statute. 594 U.S. at 433. Where, as here, Plaintiffs cannot allege an invasion of a privacy interest, Plaintiffs lack standing to sue.

Plaintiffs' contention that the Court should address the standing deficiency here as a merits argument (Dkt. 28 at 6:3-16) fundamentally misunderstands Envato's argument. On standing, Envato argues that even if the VPPA applies to the viewing of stock videos for commercial purposes, there is no standing to pursue such a claim (though Envato also makes merits arguments discussed below). *Cantu v. Tapestry*, the case to which Plaintiffs point in support (Dkt. 28 at 6:3-16), does not warrant a different conclusion. Defendants there argued that the plaintiff had not suffered an injury-in-fact because his PII was not disclosed. 2023 WL 4440662, at *5. That *is* a merits argument because it asks whether the statutory definition of PII was in fact disclosed. Envato's argument is that even if PII, as the VPPA defines it, was

disclosed, it is not the kind of PII that supports these particular Plaintiffs' standing to sue.

**B. The Amended Complaint Should Be Dismissed Under Fed. R. Civ. P. 12(b)(6) For Failure To State A Claim.**

**1. Plaintiffs Do Not Allege Disclosure Of PII.**

Plaintiffs' claim is also unique because they cannot allege that Envato discloses their *un*encrypted Facebook IDs, or that their Facebook profiles have identifying information. Plaintiffs do not meaningfully engage with this difference, either. Instead, Plaintiffs rely on hypothetical allegations concerning unnamed putative class members and generalized, abstract statements about Facebook and information that could be accessible by some disclosure not alleged here.

Parsing Plaintiffs' allegations exposes their inability to plead an actionable disclosure of PII. Plaintiffs allege that they "owned a Facebook account" that they have "used" during the time they were each subscribed to Envato. (Dkt. 19 ¶¶ 8-9.) Yet they do not allege they were *logged in* to their Facebook accounts when they were using Envato's website. This distinction is critical based on Plaintiffs' own description of the way cookies are transmitted through the Meta Pixel: someone logged in to Facebook while "watching and/or downloading a video on Envato will transmit the [unencrypted] c_user cookie to Facebook." (*Id.* ¶ 43.) But someone *not* logged in to Facebook will transmit "a smaller set of cookies," including "an *encrypted* Facebook ID." (*Id.* ¶¶ 46-47 (emphasis added).) Because they do not allege that they were logged in to Facebook while using Envato's website, Plaintiffs can allege only that "on information and belief, Defendant discloses to Facebook [their] Facebook ID," without specifying that the Facebook ID is encrypted. (*Id.* ¶¶ 54, 60.) That the Facebook IDs allegedly disclosed were encrypted matters: Plaintiffs only allege that an *un*encrypted Facebook ID is PII. (*See id.* ¶ 44.)

Nowhere in the Complaint or their Opposition do Plaintiffs assert that they were logged in to Facebook when using Envato's website. (*See* Dkt. 28 at 10:27-11:6.) Instead, Plaintiffs insist they allege "that '[t]he cookies that were transmitted as a result of the Meta Pixels that [Envato] installed on its website conveyed Plaintiffs' . . . Facebook IDs (through the c_user cookie).'" (*Id.* at 11:5-6 (citing Dkt. 19 ¶ 37).) The ellipses in that sentence obscure that this allegation concerns purported "Class Members," not just the named plaintiffs. (Dkt. 19 ¶ 37.) And Plaintiffs cannot

survive a motion to dismiss by relying on allegations for unknown, unnamed class members (Dkt. 23 at 12:23-28 (citing *Moser v. Benefytt, Inc.*, 8 F.4th 872, 877 (9th Cir. 2021); *Ridgeway v. Walmart, Inc.*, 946 F.3d 1066, 1076 (9th Cir. 2020))), a principle Plaintiffs do not refute.[1]

Even if Plaintiffs could allege that their unencrypted Facebook IDs were transmitted, that too would be insufficient to demonstrate that PII was disclosed. Here again, Plaintiffs assert only broad, generic allegations about Facebook to distract from what's missing in their pleading specific to the named Plaintiffs. For example, Plaintiffs insist that "[a]nyone can identify a Facebook profile and all personal information publicly listed on that profile, including a person's first and last name[,] by appending the Facebook ID to the end of Facebook.com." (Dkt. 19 ¶ 44.) But Plaintiffs do not allege that *their* names are included in their Facebook profiles. At most, Plaintiffs allege, citing to a news article, that "Facebook describes itself as a 'real identity platform.'" (Dkt. 19 ¶ 28.) This does not substitute for an allegation, missing in the Complaint, that Plaintiffs' names are included in their Facebook profiles.

Plaintiffs also ignore the cases holding that a "complaint does not adequately allege that [disclosing their Facebook IDs] results in sharing of any personal information" without alleging that Plaintiffs' "Facebook pages contain any personal information." *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023); *see also Heerde v. Learfield Commc'ns, LLC*, No. 2:23-cv-04493-FLA-MAAx, 2024 WL 3573874, at *4 (C.D. Cal. July 19, 2024) (dismissing VPPA claim for failure to allege Facebook pages contained viewable PII to identify plaintiffs); *Solomon v. Flipps Media, Inc.*, No. 22-cv-5508-JMA-JMW, 2023 WL 6390055, at *3 (E.D.N.Y. Sept. 30, 2023) ("Plaintiff needed to allege that her public Facebook profile page contained identifying information about her in order to state a plausible claim.").

**2. Envato Is Not A Video Tape Service Provider Under The VPPA.**

Unlike defendants in other VPPA cases, Envato's business includes far more than just selling videos. As such, Envato is not "engaged in the business. . . of rental, sale, or delivery of

[1] *Ade v. Viki* (Dkt. 28 at 10:11-18) does not support the proposition that encrypted IDs are PII. There, the court did not explicitly consider whether an encrypted Facebook ID constitutes a disclosure of PII. *See Ade v. Viki, Inc.*, No. 23-cv-02161-RFL, 2024 WL 1880153, at *2 (N.D. Cal. Mar. 28, 2024) (analyzing "plaintiffs' Facebook IDs" without specifying the type of cookies transmitted).

prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

The parties agree that this issue turns on whether Plaintiffs "sufficiently plead the defendant's involvement 'connotes a particular field of endeavor' or a 'focus of the defendant's work.'" *Cantu v. Tapestry, Inc.*, 697 F. Supp. 3d 989, 993 (S.D. Cal. 2023) (quoting *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017)). "[T]o be engaged in the business of delivering video content, the defendant's product must not only be *substantially* involved in the conveyance of video content to consumers but also *significantly* tailored to serve that purpose." *In re Vizio*, 238 F. Supp. 3d. at 1221 (emphasis added).

No case Plaintiffs cite establishes Envato as a video tape service provider by that standard. In *Tawam v. Feld Ent. Inc.* (Dkt. 28 at 7:16-26), for example, the court held that "the allegations . . . concerning the volume and role of the video content at issue in this case do not support an inference that the videos viewed by Plaintiffs are more than peripheral to Defendant's business or that Defendant's website is significantly tailored to the purpose of conveying those videos," and dismissed the case. 684 F. Supp. 3d 1056, 1061 (S.D. Cal. 2023). Similarly, in *Cantu v. Sunrun Inc.* (Dkt. 28 at 8:9-14), the court dismissed the complaint with prejudice, noting that, contrary to Plaintiffs' suggestion and cherrypicked quotes, "the mere fact that a defendant has a certain number of videos on its website . . . , without more, does not transform it into a videotape service provider." No. 23-CV-974-JO-AHG, 2023 WL 11795670, at *3 (S.D. Cal. Nov. 22, 2023).

So, too, here, selling video materials is not the focus of Envato's work. Yes, Envato's media assets include video; Envato acknowledged as much in its motion. But stock video and video templates represent only two of fourteen categories of assets, and only about a third of the individual assets available. (Dkt. 23 at 3:7-11.) Considering Envato's total mix of media assets, that proportion is not enough to transform Envato from what it is—a site offering a vast range of "creative assets" to content creators (Dkt. 23-3 at 3)—into a video tape service provider.

**3. Plaintiffs Consented To Envato's Recording And Use Of Information.**

Plaintiffs here consented to the disclosure about which they complain. Plaintiffs subscribed to Envato, which necessarily required them to create an account—a fact they do not deny—and in doing so, to agree to Envato's User Terms. Those User Terms link to a Privacy

Policy and Cookie Policy, each of which disclosed to Plaintiffs that Envato shares information about their page views and video downloads in the very manner Plaintiffs challenge, and gave Plaintiffs the opportunity to opt out of such sharing. Not only did Plaintiffs decline to opt out, but every time they logged in, they reaffirmed their agreement to the same terms.

None of Plaintiffs' arguments to the contrary overcome their explicit consent to the use of tracking cookies they now challenge.

First, Plaintiffs' argument that they "adequately alleged that Envato did not receive [their] valid written consent" rests on nothing more than the Amended Complaint's conclusory and barebones allegations. (Dkt. 28 at 11:18-19.) Plaintiffs' conclusory allegation that any disclosure was "without their consent," (*id.* (citing Dkt. 19 ¶¶ 6, 35)) or bald recitation of the statutory language to allege that Envato "does not seek, let alone receive, 'informed, written consent' from Plaintiffs and other Class Members" (*id.* (citing Dkt. 19 ¶ 88)) is insufficient. *See Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (discounting allegations on a motion to dismiss that "do nothing more than state a legal conclusion"). The documents Envato cited in its motion conclusively establish that Plaintiffs agreed to the policies and practices at issue here. Plaintiffs make no attempt to address the case law affirming that their agreement to a policy is valid and enforceable when it is provided with sign up or sign in. (Dkt. 23 at 15:14-19.)

Second, while Plaintiffs ask the Court to find that consent is a fact issue for another day, there is no reason to delay the inevitable conclusion that Plaintiffs did, in fact, consent to tracking technologies in this case. Plaintiffs do not refute that they agreed to Envato's User Terms, either when they created an account or each time that they logged in afterwards. Plaintiffs also do not object to the Court's consideration of Envato's Terms of Use, Privacy Policy, and Cookie Policy. And it is Plaintiffs, not Envato, who introduced Envato's Privacy Policy into the pleadings. (*See* Dkt. 19 ¶ 66 ("Defendant's Privacy Policy does not inform Defendant's customers that their [PII] will be disclosed to unauthorized third parties such as Meta." (cleaned up)).) As such, there is simply no factual dispute about Plaintiffs' consent to Envato's use of the Meta pixel.

Third, Plaintiffs' argument that the VPPA's requirement that consent be "'distinct and separate from any form setting forth other legal or financial obligations of the consumer'" (Dkt.

28 at 12:6-11 (quoting statute)) stretches the statutory language too far and lacks any precedential support. Plaintiffs' argument depends on construing the Privacy Policy and Cookie Policy—the policies that establish their consent to the alleged disclosure here—as indistinct from the User Terms—the form that sets forth the consumers' "legal or financial obligations." But simply to state Plaintiffs' position refutes it. The User Terms is the only document that spells out the *users'* obligations. The Privacy Policy and Cookie Policy are separate documents, found in separate links on Envato's website, that spell out Envato's cookie practices and Plaintiffs' consent thereto. Yes, the User Terms include a hyperlink to the Privacy Policy, which in turn links to the Cookie Policy. But providing users with the convenience of linking to separate documents does not make them one, and Plaintiffs cannot cite any authority holding that the VPPA would consider these policies one document because they are incorporated by reference. (*See* Dkt. 28 at 12:6-13:2.)

Fourth, Plaintiffs are simply wrong in how they describe the contents of the Privacy Policy and Cookie Policy; those documents plainly notify Plaintiffs of the very practices they now challenge. Plaintiffs complain that their PII was transmitted via cookies. The section of the Privacy Policy addressing "cookies, web beacons and similar technologies," which would include the Meta Pixel, discloses what information is recorded, including "the pages which you have accessed." (Dkt. 23-11 at 6.) And the Policy states that Envato "will use third party advertising companies to serve ads based on prior visits to our Sites." (*Id.*) The Cookie Policy assures users that "[n]o personally identifiable information is collected by these cookies," and that such information is kept separate from "anonymous data" the cookies collect. (Dkt. 23-12 at 3.)

None of this is inconsistent with a valid VPPA disclosure, as Plaintiffs contend: the personal information that Envato collects, as described in the Privacy Policy, is provided from the users when they register, purchase, or subscribe. (Dkt. 23-11 at 2.) Envato separately discloses that "third party service providers (like . . . Facebook) . . . may provide information about you when you link, connect, or login to your account with [Facebook]." (*Id.* at 3.) Plaintiffs do not allege otherwise: the information collected by the cookies transmitted via the Meta Pixel does not include the personally identifiable information that Envato collects—i.e. purchase and registration information—and only includes anonymous identifiers related to Facebook that are either

encrypted or are, on their own, insufficient to show personal information, as stated above. Plaintiffs may disagree with whether Facebook can use information disclosed to independently identify them; but they cannot dispute that every relevant fact about Envato's cookie practices alleged in the Amended Complaint is disclosed in the policies to which they consented.

Finally, Plaintiffs cannot quibble with the timing of Envato's disclosures, or their ability to make alternative choices about Envato's practices (Dkt. 28 at 13:26-14:11). As for timing, Plaintiffs do not refute that in addition to agreeing to Envato's Terms and Policies when they created their accounts, they reaffirmed their agreement with every sign-in. Nor do Plaintiffs suggest that they are subscribers that somehow do not log in to their Envato account to view or download videos. Plaintiffs allege that their information was disclosed when they viewed or downloaded videos from Envato's website. (Dkt. 19 ¶¶ 55, 61.) Thus, each time Plaintiffs viewed or downloaded videos, when their information was allegedly disclosed, they did so after logging in to their Envato account, and by virtue of doing so, consented to any alleged disclosure.

As for their ability to opt out, the Cookie Policy clearly discloses how to opt out of third-party advertising cookies. (Dkt. 23-12 at 3.) Plaintiffs challenge the adequacy of that opt-out choice by arguing the content of the Cookie Policy is inaccurate (Dkt. 28 at 14:1-11); as discussed above, however, the Policy is accurate. And while Plaintiffs complain they have no "option … to withdraw [consent] on a case-by-case basis," (Dkt. 28 at 14:3), that is simply not correct: any user can adjust their cookie preferences at will at any time, allowing someone to reject cookies before downloading a particular video and then accepting them again thereafter. Plaintiffs do not allege that they did not have the capability to block cookies in the web browser they used.

### C. Australia Is A More Convenient Forum.

Despite their agreement to litigate any dispute with Envato in Australia (where Envato is headquartered and conducts its business), Plaintiffs filed suit in California, based on alleged conduct that occurred in Australia. Because Envato has shown that Australia is an adequate alternative forum, and because both the balance of private and public interest factors weighs in favor of litigating Plaintiffs' claim in Australia, this case should be dismissed.

Courts routinely recognize that Australia offers the requisite legal system, legal services,

and remedies to properly adjudicate Plaintiffs' claim. *See McGechie v. Atomos Ltd.*, No. 2:22-cv-01812-DJC-DB, 2024 WL 1054924, at *7 (E.D. Cal. Mar. 11, 2024); *Summa Resource Holdings LLC v. Carbon Energy Limited,* No. 15-cv-05334-TEH*,* 2016 WL 2593868 at *3 (N.D. Cal, May 5, 2016) ("[An Australian state] has a sophisticated court system based on Australian common law, which is similar to the American court system."); *Glob. Med. Sol., Ltd. v. Simon*, No. 12-cv-04686-MMM-FMOx, 2013 WL 12371339 at *7 (C.D. Cal. Jan. 10, 2013) ("Australian courts have the power to compel witnesses to testify; to take evidence from expert witnesses; and to compel parties to produce documents for the court's consideration."). Plaintiffs do not—and cannot—argue that Australia is an inadequate forum, only that Defendants have not provided sufficient information about the available legal remedies. (Dkt. 28 at 16:5-17:2.) But the adequacy requirement is "easy to pass; typically, a forum will be inadequate only where the remedy provided is so clearly inadequate or unsatisfactory, that it is no remedy at all." *Silvertip Partners, LLC v. Proactive Preparedness, Inc.*, No. LACV 16-5826-VAP (ASx), 2018 WL 5099747 at *2 (C.D. Cal., 2018) (cleaned up). Australia's privacy laws, such as the Privacy Act of 1988, offer a remedy here. Nothing more is required.

Next, the private interest factors weigh in favor of dismissal, as Envato and the majority of its employees reside in Australia. Plaintiffs assert that Envato's minimal, if any, ties to California warrant otherwise, but do not suggest that any of Envato's conduct at issue occurred in California. It is simply not the case that Plaintiffs' choice of forum is "presumptively convenient" or "entitled to deference" (Dkt. 28 at 18:1-11). On that point, Plaintiffs rely on *Boston Telecomm. Grp., Inc. v. Wood*, which involved a Slovakian company led by an American citizen living in North Carolina, and which did not involve a purported nationwide class. 588 F.3d 1201, 1203 (9th Cir, 2009). And Plaintiff does not engage with the caselaw finding a permissive forum selection clause weighs in favor of the foreign jurisdiction, even when the "traditional forum non conveniens test" is applied. (Dkt. 28 at 18:12-24.)

The public interest factors weigh in favor of dismissal, as well, because the case involves the obligations of an Australian company whose agreement with Plaintiffs is governed by Australian law. Plaintiffs overstate the connection to California, offering no reason to believe that

"a considerable proportion of putative class members are residents of California," and entirely discounting the relevant conduct of Envato, which did not occur in the United States. (Dkt. 28 at 21:3-10.) Plaintiffs' insistence that the privacy concerns in the California Constitution or the VPPA itself somehow tether this case to California is misguided. (Dkt. 28 at 21:10-15.) Privacy concerns are not California-specific; Australia likewise expressed an interest in protecting consumer privacy when it enacted the Privacy Act of 1988. And Plaintiffs do not argue that the Central District of California's docket is not congested. (Dkt. 28 at 22:6-22.)

**D. Leave To Amend Would Be Futile.**

Plaintiffs cannot argue that any of the Amended Complaint's "shortcomings" is a surprise (Dkt. 28 at 23:5-20): as required by this Court's Civil Standing Order, counsel disclosed "all issues to be raised in the motion" with specificity. (Dkt. 12 § VIII.A; Dkt. 23 ("This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on August 1, 2024.").) Plaintiffs made no attempt to amend after that conference.

And Plaintiffs do not deny the pleading deficiencies raised in Envato's motion: that the videos on Envato's site are used for commercial purposes and republished to an audience, that they were logged out of their Facebook accounts when they used Envato's website, or that their Facebook accounts do not contain their personal information. Nor do Plaintiffs state what they would instead allege in an amended pleading to overcome those shortcomings. Local Rule 15-1 requires that "any proposed amended pleading must be filed as an attachment to the related motion or stipulation." Under these circumstances, leave to amend would be futile. *See Cervantes v. Cntrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). The Amended Complaint should be dismissed with prejudice.

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Amended Complaint in its entirety, with prejudice.

Dated: October 11, 2024

Respectfully Submitted,

**GOODWIN PROCTER LLP**

By: /s/ Mark David McPherson

MARK DAVID MCPHERSON (SBN 307951)
*mmcpherson@goodwinlaw.com*
620 Eighth Avenue
New York, NY 10018
Tel.: 212.813.8869
Fax.: 212.202.4582

W. KYLE TAYMAN (admitted pro hac vice)
*ktayman@goodwinlaw.com*
901 New York Avenue NW
Washington, DC 20001
Tel.: 202.346.4000
Fax.: 202.346.4444

LAURA G. BRYS (SBN 242100)
*lbrys@goodwinlaw.com*
601 S. Figueroa Street, 41st Floor
Los Angeles, CA 90017
Tel.: 213.426.2500
Fax.: 213.623.1673

Attorneys for Defendants

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Envato Pty Ltd and Envato Elements Pty Ltd, certifies that this memorandum of points and authorities contains 4,321 words and complies with the limit set by the Court's Standing Order dated June 6, 2024. (Dkt. 12, §VIII.C.)

October 11, 2024

*/s/ Mark David McPherson*
MARK DAVID MCPHERSON

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Central District of California by using the CM/ECF system on **October 11, 2024**. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on **October 11, 2024**.

*/s/ Mark David McPherson*
MARK DAVID MCPHERSON